SOLOMON PEARL BLUM HEYMANN & STICH LLP
Attorneys for Defendant
Bradford Black
40 Wall Street-35th Floor
New York, New York 10005
(212) 267-7600
David P. Stich (DPS #9096)
Jill H. Teitel (JHT #8559)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ISAAC STENGEL                                    :

                                                 :      Index No.
                        Plaintiff,               :      08CV00416

        -against-                                :

                                                 :      **AFFIDAVIT**
                                                        **IN SUPPORT OF**
BRADFORD BLACK                                   :      **DEFENDANT'S**
                                                        **MOTION TO DISMISS**
                        Defendant.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK        )
                         )SS.
COUNTY OF NEW YORK       )

        Jill H. TEITEL, being duly sworn, hereby deposes and says:

        1.      I am an associate at the law firm of Solomon Pearl Blum Heymann & Stich LLP,

attorneys for defendant DR. BRADFORD BLACK ("Dr. Black").  I make this affidavit in further

support of Dr. Black's motion for an order dismissing this action for lack of personal jurisdiction

pursuant to Fed R. Civil P. Rules 12(b)(1)(2)(6).

        2.      The purpose of this Affidavit is to place before the Court relevant pleadings and

orders from prior proceedings involving these parties both in this Court and in the Ohio courts.

3.    Plaintiff commenced a federal action in January, 2003 in the case entitled, <u>Stengel v.</u> <u>Black</u>, 2004 U.S. Dist. LEXIS 17398 (S.D.N.Y. 2004), Index No. 03 Civ. 495 (GEL) (hereinafter, the "First Federal Action"), pursuant to 28 U.S.C. §1332, the diversity statute.  See, Complaint annexed hereto as Exhibit A.

4.    On August 26, 2004, this Court dismissed the complaint of Isaac Stengel based upon lack of subject matter jurisdiction because the Plaintiff's damages (value of the Diamond) did not exceed the jurisdictional requirement of $75,000.  See, the decision of Judge Lynch annexed as Exhibit B hereto.

5.    There was a second action filed by Plaintiff in the New York State Supreme Court, County of New York on December 1, 2004 (the "New York State Court Action") and was based upon the same grounds as the First Federal Action.  See, Exhibit C hereto.

6.    Dr. Black brought a Motion to Dismiss on January 7, 2005.  On August 2, 2005, by decision of Justice Debra A. James, Isaac Stengel's complaint was dismissed for lack of personal jurisdiction, relying upon the deposition testimony of Plaintiff in the First Federal Action that, the "Plaintiff has failed to carry the burden of establishing that this court has personal jurisdiction over the defendant."  See, Exhibit D hereto.

7.    Plaintiff appealed Justice James' decision and after oral argument on April 27, 2006, the Supreme Court of the State of New York, Appellate Division, First Judicial Department, affirmed the decision of the Honorable Debra A. James.  See, Exhibit E hereto.

8.    The third action was brought in the Ohio State, Columbiana County Court of Common Pleas for unjust enrichment, conversion and failure to acquire good title.  That case was transferred to the Ohio State Stark County Court of Common Pleas ("Ohio Court") on Defendant's Motion for Change of Venue on March 16, 2006.  See, Exhibit F hereto.

9.       Dr. Black brought a Motion for Summary Judgment in the Ohio Action on August 4, 2006. Plaintiff responded, albeit late to the motion, yet, Plaintiff's opposition papers were considered by the Ohio Court. The Ohio Action was dismissed by Order of Judge Charles E. Brown, Jr. on September 1, 2006, because, as Judge Brown stated, "there are no genuine issues of material fact." See, Exhibit G annexed hereto.

10.       Judge Brown's opinion stands for the premise that, since Dr. Black was a good faith purchaser in the ordinary course of business, Dr. Black was blameless and not culpable of committing the act of conversion. Subsequent to the entry of the Order dismissing the Ohio Action, Mr. Stengel submitted a letter to the Ohio Court requesting the vacatur of Judge Brown's decision. Thereafter, Judge Brown rendered a subsequent opinion dated September 13, 2006 denying Plaintiff's request for relief from the judgment of dismissal. See, Exhibit H annexed hereto.

11.       Plaintiff appealed the Ohio Court's decisions and, pursuant to the rules of Court in Ohio the Court of Appeals, Stark County Ohio, Fifth Appellate District, (the "Ohio Court of Appeals") declined jurisdiction of the appeal of the order granting summary judgment as untimely and affirmed the lower court decision on denial of the motion for relief from the summary judgment order. See, Exhibit I annexed hereto.

12.       Not stopping there, on May 21, 2007, Mr. Stengel appealed from the Order of the Ohio Court of Appeals and brought the case to the Supreme Court of Ohio but the Supreme Court of Ohio did not choose to accept jurisdiction over the case by Order dated September 26, 2007. See, Exhibit J annexed hereto.

13.    Accordingly, the Defendant requests that the Court enter judgment dismissing the

Complaint in this action and awarding Defendant costs expended in defending this matter.

_____
JILL H. TEITEL

Sworn to here before me
on this _11_ day of February 2008.

_____
Notary Public

DAVID P. STICH
Notary Public, State Of New York
No. 02ST4981028
Qualified In New York County
Commission Expires May 6, 20 _14_

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ISAAC STENGEL,

                              Plaintiff,           **COMPLAINT**
                                                   **PLAINTIFF DEMANDS TRIAL BY JURY**

              -against-

                                                   03 CV 0495
BRADFORD BLACK,

                              Defendant.

------------------------------------------------------------

1.      At all times hereinafter mentioned, plaintiff was and still is a resident of the State of New

York, City of New York with a mailing address at: c/o Diamond Dealers Club, 11 West 47th Street,

New York, New York 10036.

2.      Defendant Bradford Black was and still is a resident of the State of Ohio and having a

mailing address at: 2360 Southeast Boulevard, Salem, Ohio 44460.

3.      The jurisdiction of this Court is invoked under "diversity of citizenship" pursuant to 28 USC

§1332.

4.      Upon information and belief, defendant had financial dealings with one David Rosenthal,

from the year 2000 through November, 2002.

5.      Upon information and belief, defendant was aware of the questionable character and David

Rosenthal, who was a middle man and salesman of certain diamonds.

6.      Upon information and belief, the defendant enlisted the services of the FBI, specifically agent

Mark McMurty in connection with his prior dealings with David Rosenthal.

7.      Upon information and belief the defendant was fully aware that David Rosenthal did not own

the diamond which is the subject of this lawsuit.

8.      At all times herein mentioned, plaintiff was a dealer regularly engaged in the business of

buying and selling diamonds and is the owner of the 5.10 carat GVS2 quality solitaire diamond, the retail value of which is $84,150.00, which is in the possession of the defendant and is the subject matter of this lawsuit.

9.      That when plaintiff learned of the fact that the defendant had possession of the subject diamond, on or about October 27, 2002, the plaintiff, in writing, demanded from the defendant that the diamond be returned to him.

10.     That the defendant explained to the plaintiff that he has received the diamond from David Rosenthal for money he had given to David Rosenthal.

11.     That defendant told plaintiff that he had acquired a judgment against David Rosenthal for the money that he had given to David Rosenthal.

12.     That defendant told plaintiff that he wanted to return the subject diamond to David Rosenthal if he would reimburse him for the money. However, David Rosenthal did not reimburse him for the money and the defendant still has possession of the diamond in question.

13.     That the defendant told the plaintiff that he is holding subject diamond as collateral.

14.     Plaintiff has been damaged by the actions of the defendant in the sum of $84,150.00.

WHEREFORE, plaintiff demands judgment in the form of money damages in the amount of $84,150.00 or in the alternative, a return of the diamond, together with costs and interest.

ISAAC STENGEL
c/o Diamond Dealers Club
11 West 47th Street
New York, New York 10036
(917) 416-1759

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ISAAC STENGEL,                                   :
                                                 :
                              Plaintiff,         :      **AMENDED COMPLAINT**
                                                 :      **PLAINTIFF DEMANDS TRIAL BY JURY**
              -against-                           :
                                                 :      CASE # 03  CIV. 0495 (GEL)
                                                 :
BRADFORD  BLACK,                                 :
                                                 :
                              Defendant.         :
------------------------------------------------------------X

RECEIVED
MAY 1 6 2003
PRO SE OFFICE

1.    At all times hereinafter mentioned, plaintiff was and still is a resident of the State of New

York, City of New York with a mailing address at: c/o Diamond Dealers Club, 11 West 47th Street,

New York, New York 10036.

2.    Defendant Bradford Black was and still is a resident of the State of Ohio and having a

mailing address at: 2360 Southeast Boulevard, Salem, Ohio 44460.

3.    The jurisdiction of this Court is invoked under "diversity of citizenship" pursuant to 28 USC

§1332.

4.    David Rosental was a diamond salesmen who acted as an agent for New York City

Diamond Dealers in general, and on specific occasions, for Isaac Stengel, a diamond merchant.

5.    Upon information and belief, defendant had financial dealings with David Rosental on

numerous occasions prior to the year 2000 and continuing through November 2002.

6.    Upon information and belief, defendant Bradford Black, in person, transacted business with

his agent, David Rosental, who was a diamond broker to the public in general, and specifically for

the transactions with the defendant, Bradford Black.

7.    David Rosental; contacted Isaac Stengel on behalf of Bradford Black, regarding a particular

size and shape diamond that he wanted to procure for Bradford Black.

8.      Upon information and belief, defendant Bradford Black has had numerous contacts with New York City in connection with purchasing and replacement of diamonds for many years, prior to May 26, 2000.

9.      Upon information and belief, prior to May, 2002 defendant Bradford Black had many dealings and had continuous business dealings with David Rosental, as his agent, in the city of New York, in connection with transactions involving the sale of diamonds.

10.     Upon information and belief, prior to May 2000, David Rosental sold a certain diamond to Bradford Black which subsequently was lost and was compensated for the loss by his insurance company. An additional diamond was reportedly chipped or damaged and the defendant Bradford Black submitted an additional claim for repairs or replacement, all through his agent, David Rosental.

11.     On or about May 26, 2000, defendant Bradford Black entered into a contract with his agent David Rosental for the purpose of providing another diamond gemstone to Bradford Black.

12.     Upon information and belief, defendant Bradford Black used the services of David Rosental, his agent, on a continuing basis for the purpose of procuring a replacement diamond and for dealing with the insurance company which covered the claim for defendant Bradford Black.

13.     Upon information and belief, defendant Bradford Black was aware of the questionable character of David Rosental, who was a middle man and salesman of certain diamonds.

14.     Upon information and belief, there appeared to be some problem which arose between the defendant Bradford Black and his agent David Rosental which caused the defendant to enlist the services of the FBI, specifically agent Mark McMurty in connection with his prior dealings with David Rosental.

15.     Upon information and belief the defendant was fully aware that David Rosental did not own the diamond which is the subject of this lawsuit.

16.    At all times herein mentioned, plaintiff was a dealer regularly engaged in the business of buying and selling diamonds and is the owner of the 5.10 carat GVS2 quality solitaire diamond, the retail value of which is $84,150.00, which is in the possession of the defendant and is the subject matter of this lawsuit.

17.    That when plaintiff learned of the fact that the defendant had possession of the subject diamond, on or about October 27, 2002, the plaintiff, in writing, demanded from the defendant that the diamond be returned to him.

18.    That the defendant explained to the plaintiff that he has received the diamond from David Rosental for money he had given to David Rosental.

19.    That defendant told plaintiff that he had acquired a judgment against David Rosental (attached hereto) for the money that he had given to David Rosental.

20.    That defendant told plaintiff that he wanted to return the subject diamond to David Rosental if he would reimburse him for the money. However, David Rosental did not reimburse him for the money and the defendant still has possession of the diamond in question.

21.    That the defendant told the plaintiff that he is holding subject diamond as collateral.

22.    Plaintiff has been damaged by the actions of the defendant in the sum of $84,150.00.

WHEREFORE, plaintiff demands judgment in the form of money damages in the amount of $84,150.00 or in the alternative, a return of the diamond, together with costs and interest.

ISAAC STENGEL
c/o Diamond Dealers' Club
11 West 47th Street
New York, New York 10036
(917) 416-1759

**EXHIBIT  B**

LEXSEE 2004 US DIST LEXIS 17398

**ISAAC STENGEL, Plaintiff, -against- BRADFORD BLACK, Defendant.**

**03 Civ. 0495 (GEL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2004 U.S. Dist. LEXIS 17398*

**August 26, 2004, Decided**
**August 30, 2004, Filed**

**PRIOR HISTORY:** *Stengel v. Black, 2003 U.S. Dist. LEXIS 7039 (S.D.N.Y., Apr. 23, 2003)*

**DISPOSITION:**    [*1] Defendant's motion to dismiss complaint for lack of subject matter jurisdiction granted.

**COUNSEL:** Isaac Stengel, pro se, for plaintiff.

David P. Stich, Solomon Pearl Blum Heymann & Stich, New York, NY (Michael J. Semack, of counsel), for defendant.

**JUDGES:** GERARD E LYNCH, United States District Judge.

**OPINION BY:** GERARD E LYNCH

**OPINION**

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge:

Plaintiff Isaac Stengel, a diamond dealer, brings the present action in diversity against defendant Bradford Black, for replevin of a 5.1-carat emerald-cut diamond in Black's possession that Stengel allegedly owns, or in the alternative for damages for conversion. Black moves to dismiss for lack of subject matter jurisdiction, claiming the amount in controversy is less than $ 75,000. For the reasons stated below, Black's motion will be granted.

**BACKGROUND**

The facts, which are taken from the complaint except where otherwise noted, are as follows. A diamond dealer named David Rosental contacted Isaac Stengel in May 2000 to procure a diamond of a particular size and shape for the defendant Bradford Black. Stengel testified at his deposition that he procured a 5.1-carat emerald-cut diamond from [*2] Julius Klein Diamonds LLC ("Klein") and sold it to Rosental, from whom Black in turn purchased it. (Stengel Tr. 38-57.) However, Rosental's check to Stengel for the promised amount was dishonored for insufficient funds. (Id. 62.) The diamond later became the subject of a dispute between Rosental and Black, and when Stengel asked Black to return the diamond in October 2002, Black refused, stating that he was holding it "as collateral" in that dispute. Stengel claims, however, that Black was aware that Rosental did not own the diamond. Stengel brought the present action for the return of the diamond with costs and interest, and in the alternative for damages in the amount of $ 84,150, which he claims is the retail value of the diamond.

At a status conference on March 17, 2004, the defendant indicated his intention to move to dismiss based on lack of jurisdiction, arguing that the pleadings and facts adduced in discovery do not support a finding that the amount in controversy could exceed $ 75,000. Since it was in the interest of efficiency to consider the jurisdictional question before addressing motions for summary judgment on the merits, the Court stayed proceedings in order to [*3] consider the jurisdictional question, which was briefed on an expedited schedule. [1]

    1 Plaintiff argues that the defendant's motion to dismiss was untimely because it was filed beyond the 20 days afforded to a defendant to assert affirmative defenses in an answer. (P. Mem. 4.) However, the absence of subject matter jurisdiction defeats the Court's power to take any action at all; thus, it may be raised, by motion of any party or by the Court *sua sponte*, at any time. *Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 786 (2d Cir. 1994).* Accordingly, *Rule 12(h)(3), Fed. R. Civ. P.,* allows the defense of lack of subject matter jurisdiction to be raised by

motion at any time, not only in a defendant's answer.

## DISCUSSION

### I. Legal Standard

Plaintiff asserts diversity jurisdiction under *28 U.S.C. § 1332*; under the statute, such jurisdiction is proper only when the amount in controversy exceeds $ 75,000. The [*4] amount in controversy is determined from the time the action is commenced. *Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994)*. On a motion to dismiss challenging the sufficiency of the amount in controversy, the sum claimed by the plaintiff ordinarily controls, so long as it is claimed in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289, 82 L. Ed. 845, 58 S. Ct. 586 (1938)*. A suit may not be dismissed for lack of the jurisdictional amount in controversy unless it appears "to a legal certainty" that the plaintiff cannot recover the amount claimed. Id. "The legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved ... in favor of the subjective good faith of the plaintiff." *Chase Manhattan Bank, N.A. v. American Nat. Bank and Trust Co., 93 F.3d 1064, 1070 (2d Cir. 1996)* (citations omitted).

However, the burden of proof rests on the party seeking to establish federal jurisdiction to demonstrate "to a 'reasonable probability' that the claim is in excess of the [*5] statutory jurisdictional amount." *Tongkook America, 14 F.3d at 784*. "Where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" *United Food & Comm. Workers Union v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994)*, citing *McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 80 L. Ed. 1135, 56 S. Ct. 780 (1936)*. Such proof may consist of evidence in the record produced in discovery. Id. If on the face of the complaint or the facts disclosed at trial, it becomes apparent "to a legal certainty" that the plaintiff's claim could never have amounted to the sum necessary to confer jurisdiction, "there is no injustice in dismissing the suit." *St. Paul Mercury, 303 U.S. at 290*.

## II. Amount in Controversy

### A. Measure of Damages

To determine the amount in controversy in a claim for money damages, the starting point is the measure of damages permitted by law under the cause of action claimed. See *Lucente v. IBM, 310 F.3d 243, 261 (2d Cir. 2000)*. [*6] The present action sounds in either conversion or replevin. [2] In a conversion claim, the measure of damages is the fair market value of the property converted at the time of the conversion. [3] *Caballero v. Anselmo, 759 F. Supp. 144, 148 (S.D.N.Y. 1991); Hartford Acci. & Indem. Co. v. Walston & Co., 22 N.Y.2d 672, 673, 238 N.E.2d 754, 754, 291 N.Y.S.2d 366 (1968)*. To the extent that plaintiff's complaint sounds in replevin, however, the rule is slightly more complicated. In an action for replevin, where repossession of the property is impossible, a plaintiff is entitled to the property's replacement value. See *Satterwhite v. Harriman Nat. Bank & Trust Co., 13 F. Supp. 493, 499 (S.D.N.Y. 1935)*. For these purposes, replacement value is measured at the time of trial in order to reflect any change in value during the time the property was wrongfully in the defendant's possession. Id.; *Spear v. Auto Dealers' Discount Corp., 154 Misc. 801, 278 N.Y.S. 561, 561-62 (N.Y. Sup. Ct. 1935)*. Because the value of the property at the time of trial is a matter of speculation, this rule could conceivably allow for the exercise of jurisdiction even where [*7] the value of the property was less than the required jurisdictional minimum before the wrongful conversion took place. Cf. *United Jersey Bank Southwest, N. A. v. Keystone Collision, Inc., 482 F. Supp. 71, 72 (E.D. Pa. 1979)* (noting that where value of automobile in replevin action met jurisdictional minimum at the time of conversion but had depreciated, jurisdiction was proper where damages were available to compensate for depreciation). This complication does not affect the present case, however. First, there is no indication here that repossession of the diamond is impossible; the parties agree that Black continues to possess the diamond and could return it if ordered by the Court. Second, in this case, the result is the same no matter which measure is used, as plaintiff has failed to present any competent evidence that the value of the disputed diamond exceeded $ 75,000 either at the time it was acquired by Black or at any later point.

2  The complaint in this case does not state any specific cause of action under which the plaintiff claims relief. Defendant argues that the measure of damages should be that applicable to breach of contract claims. (D. Mem. 8.) This is incorrect, as no contract between Stengel and Black is alleged. Rather, construed liberally, plaintiff's *pro se* complaint sounds in either conversion or replevin. See *Van Brunt v. Rauschenberg, 799 F. Supp. 1467, 1473 (S.D.N.Y. 1992)* ("To state a claim for conversion under New York law, a plaintiff must allege that he has an immediate superior right of possession to a specific identifiable thing and that a defendant with intent to interfere with such ownership or possession exercised dominion or actually interfered with the property to the exclusion of or in defiance of the

plaintiff's rights. Similarly, to establish a cause of action in replevin, the owner of the property must demonstrate that he has an immediate and superior right to possession of the chattel including proof of ownership.").

[*8]

3   Plaintiff asserts that the proper measure of his damages is the value of the diamond at the time of trial. (P. Mem. 7.) While an exception to the general rule measuring damages from the time of conversion exists for "unique and irreplaceable" items like works of art, see *Pagliai v. Del Re, 2000 U.S. Dist. LEXIS 744, No. 99 Civ. 9030, 2000 WL 122142, at *1 (S.D.N.Y. January 31, 2000)*, diamonds do not fall into this category, as they may be replaced here. The general rule, therefore, applies here.

## B. Evidence of the Diamond's Value

Stengel's complaint claims $ 84,150 in damages, which he asserts is the retail value of the diamond that he sold to Rosental and that Black now holds. However, outside this averment, nothing in the complaint or the post-discovery record places the value of this diamond above $ 75,000. On the contrary, the extensive competent evidence in the record, including sworn testimony and other statements by the plaintiff himself, overwhelmingly establishes that the value of the diamond is substantially less than the jurisdictional amount.

According to Stengel's deposition testimony, [*9] Rosental contacted him to seek a diamond of a particular quality for Black. Stengel then obtained the diamond in question from Klein in November 2001 for a mutually agreed-upon price of $ 45,721.50, which Stengel testified was a fair wholesale price for the diamond. (Stengel Tr. 38; 44-45.) Stengel then sold the diamond to Rosental for $ 49,898, which Rosental paid by check in April 2002. (Id. 69-70.) [4] After Rosental's check bounced, Stengel reported the matter to the police in June 2002, claiming the diamond's value at $ 50,000. (Semack Aff. Ex. G; Stengel Tr. 67-68.) When he remained uncompensated, he sued Rosental in the New York state courts in July 2002, alleging damages in the amount of $ 51,878, which, according to the complaint in that case, amounted to his loss plus interest. (Semack Aff. Ex. B at Ex. 1, P 11.)

4   Stengel testified that his price to Rosental represented a mark-up of 5% over the wholesale price (Stengel Tr. 80); in fact, the difference between the purchase and sale prices yields a profit of approximately 9%.

[*10]   In addition to these undisputed facts, other evidence in the record corroborates a low value for the diamond. Black asserts that he paid Rosental $ 63,617 for

the diamond. (P. Mem. 5.) Black's sworn testimony, however, reflects a slightly more complicated reality. Black originally paid Rosental $ 63,617 for a different diamond, several years earlier. (Black Tr. 28.) When that diamond was later damaged, Black forwarded the insurance proceeds, in the same amount, to Rosental in about May 2000, to purchase an "equivalent" stone. (id. 49-50Id. 36.) About a year and a half later (), after complaining to the FBI () and suing and obtaining a default judgment (id. 66), Black finally received a diamond from Rosental - apparently the diamond Rosental obtained from Stengel. Black, however, was unhappy with the diamond, -- which he did not think was as good as the previous diamond he had purchased from Rosental. When Black objected to the quality of the stone, Rosental refused to refund his money or take the diamond back. (Id. 58-59.) [5] In connection with his dispute with Rosental, Black had the diamond appraised; the resulting (unsworn) appraisal dated August 30, 2002, reflects [*11] a value for the diamond plus its setting, which included a platinum band and two smaller "tapered baguette" diamonds, of $ 68,500 excluding tax. (Semack Aff. Ex. F at 5.)

5   It is a reasonable inference that Rosental, who was the subject of numerous fraud complaints received by the FBI and the Postal Inspection Service (Semack Aff. Ex. G), would not have provided Black with a diamond worth *more* that Black had paid.

The only documentation in the record supporting a valuation of over $ 75,000 is the "Rapaport Diamond Report" provided by Stengel, dated April 4, 2003, which consists of a chart estimating the "approximate high cash asking price" for diamonds by weight and level of clarity. (Semack Aff. Ex. B at Ex. 5.) According to this chart, a diamond of the general size and quality of the one at issue would be valued at $ 16,300 per carat, or $ 83,130. [6] However, as defendant points out, this report is not probative for several reasons. First, like Black's appraisal, it is not a sworn statement by anyone. [*12] At best, it could be considered, as a reference relied upon in the trade, as supporting documentation for an opinion by Stengel, an experienced diamond dealer. Second, it does not represent an appraisal of the diamond in question, but rather a chart by which one may estimate the asking price of diamonds of particular weights and levels of clarity generally. Third, it purports to list estimated prices only for "pear shaped" diamonds, rather than diamonds that are emerald-cut, like the diamond in dispute. The report explicitly states that "prices for fancy shapes are highly dependent on the cut." Finally, the report itself significantly qualifies its estimates, stating that they reflect "HIGH CASH NEW YORK ASKING PRICES," and that "these prices may be substantially higher than actual transaction prices." (Semack Aff. Ex. B at 5.) Given these limitations, the

Rapaport Report is of little probative value in determining the actual fair market value of the diamond at issue here.

6    Stengel testified that the chart reflected wholesale prices. (Stengel Tr. 109-11.)

[*13]    In response to these objections, plaintiff submits several pieces of "evidence" which he has attached to his opposition papers: a letter from Martin Hochbaum of the Diamond Dealer's Club, stating that the Rapaport report on pear-shaped diamonds "is used as a reference for all fancy shaped stones," two estimates from Kramer Brothers and S.H. Zell and Sons, purporting to value the disputed 5.1 carat VS2 clarity emerald-cut diamond at $ 107,000 and $ 124,500 respectively, and three appraisals carried out by the European Gemological Laboratory ("EGL") on various diamonds, which Stengel alleges are "inferior" to the diamond he sold to Rosental, ranging from $ 78,450 to $ 91,590. (See documents attached to P. Mem.)

These documents, however, are not part of the evidentiary record, and may not be considered by the Court. First, they were not produced in discovery, despite written interrogatories that are directly on point. Black demanded "the basis for Stengel's valuation of the Diamond and ... all supporting documents (see Semack Aff. Ex. C, interrogatory # 5); Stengel's terse response directed defendant to the Rapaport report, and no other source (id. Ex. D, response # 5). [*14] Similarly, Black demanded the usual information regarding any expert witnesses to be called by Stengel (id. Ex. C, interrogatory # 21); Stengel responded that he would provide such information (id. Ex D, response # 21), but apparently never did. Even making all allowances for Stengel's *pro se* status, it would be unfair to defendant to accept the submission of purported expert opinions that were submitted for the first time after the close of discovery, after the defendant had spent the time and money to file a summary judgment motion to dismiss in good faith reliance on the presumption that the plaintiff had conformed to the discovery procedures prescribed by the Federal Rules, and that defendant therefore has not had an opportunity to explore by deposition.

Second, even if the Court were to overlook their belated production, none of the documents submitted are admissible in their present form. Neither the Hochman statement nor the various appraisals are submitted under oath, nor are the qualifications of the appraisers established. More significantly, the appraisals would not be competent testimony in any event. The letters from Kramer Bros. and S.H. Zell and Sons purport [*15] to provide an appraisal for the actual stone in question. However, neither appraiser purports to have actually examined the stone, nor could they have, as the appraisals were given in 2004, and the stone has remained in Black's possession during the pendency of this suit. The Kramer

Bros. and Zell letters are therefore more in the nature of an estimated value, much like that produced by the Rapaport Report. Moreover, even taken at face value, they purport to reflect a "retail value" (Zell) or "replacement" value (Kramer). It is undisputed, however, that Stengel operated at the wholesale level; he provides no theory of damages under which he would be able to obtain as damages for conversion the retail value of a stone that he both purchased and sold at a wholesale price. [7] The EGL appraisals, which also reflect "estimated retail replacement value[s]," are even further afield, reflecting appraisals not of the diamond at issue here but rather of other allegedly similar stones. Since, as Stengel himself has testified, each diamond is unique (Stengel Tr. 78), these appraisals are at best remote indications of the value of the diamond in question. Because neither the estimates nor the [*16] appraisals offered represent the results of an examination of the diamond in dispute, none of the evidence submitted is probative of the value of that diamond.

7    Stengel himself testified that retail prices for diamonds can be as much as 250% higher than the wholesale value. (Stengel Tr. 78.) His argument that the appraisal should be based on the prices charged by "Tiffany or Winston" (P. Mem. 6) is therefore disingenuous.

It bears emphasis that these objections to the admissibility of the submitted materials are not mere technical or formal defects that preclude the admission of probative evidence because of legal rules deployed to the disadvantage of a party who lacks legal training or representation. The problems with Stengel's submissions go directly to their probative value, as well as to their technical admissibility under rules of procedure or evidence. "Appraisals" submitted by experts who have not actually examined a precious stone whose quality has been the subject of serious dispute are of no probative [*17] weight; nor are estimates of the highly-inflated retail value of such stones probative of the damages due a diamond wholesaler in conversion or in default of replevin. Plaintiff's failure to submit these materials in a timely way during discovery prevented defendant from exploring these (and potentially other) deficiencies by cross-examination.

In fact, the best evidence presented that goes to the fair market value of this particular diamond at the time of the conversion is the price for which Rosental, a willing and knowledgeable buyer, actually purchased it in November 2001 from Stengel, a willing and knowledgeable seller. See *Datas Indus. v. OEC Freight, Inc., 2000 U.S. Dist. LEXIS 15589, No. 98 Civ. 6904, 2000 WL 1597843, at *5 (S.D.N.Y. Oct. 25, 2000),* ("It is not unreasonable to assume, in the absence of evidence to the contrary, that what the buyer and seller agreed to in this case, as re-

flected in the invoice, was in fact the fair market value."). That price was under $ 50,000. That valuation, moreover, is consistent with what Stengel himself represented to the police and to the New York State courts as the value of the property of which Rosental defrauded him. It is also [*18] consistent with the fact that Rosental tried to pass the diamond off to Black as worth approximately $ 63,000, and that Black, long before this jurisdictional issue arose, found it unsatisfactory at that price. [8]

> 8   Stengel asserts that Black "had insurance coverage based on the appraised value which was more than the purchase price" and "paid his premium based on the appraised value." Because appraisers play a role in determining market value, he argues that the value of defendant's insurance should be used as a proxy for the market price. (P. Mem. 6.) However, he offers no evidence from the record to support his assertion about defendant's insurance, nor was the Court able to find any on independent examination of the record, save for a statement by Black in his deposition that he "guess[ed]" that the diamond was insured for $ 60,000. (Black Tr. 91.) This figure is consistent with the amount defendant paid for the diamond, and does not constitute evidence that it was worth more than $ 75,000.

### C. Summary

[*19]   In sum, whether plaintiff's claim is for conversion or replevin, plaintiff has failed to carry his burden on this jurisdictional challenge of demonstrating to a "reasonable probability" by a preponderance of evidence that he could have recovered the jurisdictional minimum amount at the time the suit was filed. He has failed to offer any competent proof that the diamond's value was over $ 75,000 either when it was in his possession, or when Black took possession of it, or at any time since. On the contrary, substantial evidence in the record establishes that the actual value of the diamond to Stengel is approximately $ 50,000. On these facts, there is no basis for jurisdiction based on the stone's value at the time of the conversion; similarly, jurisdiction would not be proper based on the entirely speculative chance that, should the case go to trial at some unspecified point in the future and should recovery of the diamond prove impossible, the plaintiff might at that time be entitled to recover some amount in excess of $ 75,000. Accordingly, his suit must be dismissed for lack of subject matter jurisdiction.

### CONCLUSION

Defendant's motion is granted, and the complaint is dismissed [*20] for lack of subject matter jurisdiction.

SO ORDERED:

Dated: New York, New York

August 26, 2004

GERARD E. LYNCH

United States District Judge

**EXHIBIT C**

00/09/2020 00:39 FAX                                    ☒ 002/004

NEW YORK
COUNTY CLERK'S OFFICE

DEC ~ 1 2004

NOT COMPARED
WITH COPY FILED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------X

ISAAC STENGEL                                           Index No. 0 411 6915

                                    Plaintiffs,

              -against-                                 Verified Complaint

                                                        Civil Action

                                                        Jury Demand

BRADFORD BLACK

                              Defendant

--------------------------------------------------------

         Plaintiff, as and for his complaint against defendant alleges as follows:

1. At all times herein-mentioned plaintiff, ISAAC STENGEL, is and was
   employed in business in the County of New York City, and State of New
   York.

2. At all times herein mentioned plaintiff was a dealer regularly engaged in the
   business of buying and selling diamonds and other precious stones and
   jewelry, and is the owner of the 5.10 emerald cut shape carat GVS2 quality
   solitaire diamond. The retail value of which is $84,150.00, which is in the
   possession of the defendant BLACK and is the subject matter of this lawsuit.

3. At all times herein-mentioned defendant BLACK was a resident of the State
   OHIO at 2360 Southeast Boulevard Salem, Ohio 44460, and engaged in
   purchasing diamonds in the Borough of Manhattan, County of New York.

4. That defendant BLACK had continuous dealing with diamond merchants in
   New York since 1981.

5. Subsequently, defendant Black established contact with a Mr. Rosental
   through the Wall Street Journal in late 1980's early 1990's.

6. That defendant BLACK knew that Rosental was a broker – not an owner as he
   had advertised, and didn't own the diamonds, he charged a 5% commission on
   all his sales.

7. Upon information and belief, defendant had financial dealings with David Rosental, from the year 2000 through November 2002, and is subsequently the subject matter of this lawsuit.

8. Upon information and belief, defendant Black was aware of the questionable character of David Rosental.

9. Defendant Black's acceptance of the subject diamond was a means of acquiring collateral from Rosental.

10. On November 26, 2001 plaintiff delivered to David Rosental possession of the one 5.10 emerald cut shape carat GVS2 quality solitaire diamond with a wholesale value in excess FIFTY THOUSAND and 00/100 ($50,000.00) DOLLARS, for a possible purchase by defendant BLACK.

11. Defendant BLACK was not a bona fide purchaser; he did not purchase the diamond, as he had every intention of returning the diamond.

12. Defendant BLACK'S action was in violation of reasonable commercial standards of fair dealings in the trade. Defendant BLACK thereby enriched himself with plaintiff's property.

13. That when plaintiff learned of the fact that the defendant has possession of the subject diamond, on or about October 27, 2002, the plaintiff, demanded from the defendant the diamond or its monetary value.

14. That the defendant told plaintiff that he is holding subject diamond as collateral.

15. Plaintiff has been damaged by the actions of the defendant as to the retail value of $ 84,150.00. Wherefore plaintiff demands judgement for return of the subject diamond or its retail value.

### FIRST CAUSE OF ACTION UNJUST ENRICHMENT

16. Repeats and re alleges allegations 1 through 15.

17. Defendant BLACK'S action was in violation of reasonable commercial standards of fair dealings in the trade. Defendant BLACK thereby enriched

himself with plaintiff's property. Wherefore plaintiff demands judgement for return of the subject diamond or its retail value.

## SECOND CAUSE OF ACTION CONVERSION

18. Repeats and re alleges allegations 1 through 17.

19. Defendant BLACK converted plaintiff's property.

20. Defendant BLACK willfully and knowingly converted plaintiff's property, as he was fully aware that Rosental did not own the subject diamond.

21. Plaintiff has been damaged by defendant BLACK's conversion action. Wherefore plaintiff demands judgement for return of the subject diamond or its retail value.

## THIRD CAUSE OF ACTION FAILURE TO ACQUIRE GOOD TITLE

22. Repeats and re alleges allegations 1 through 21.

23. Plaintiff never issued an invoice transferring title to Rosental.

24. Defendant BLACK testified that he never acquired title, as Rosental did not issue him an invoice.

25. Defendant BLACK was fully aware of the fact that Rosental was a thief who did not own any diamonds.

26. Defendant BLACK made no effort to learn who the owner of the subject diamond was.

27. Whereas defendant BLACK had no intention of acquiring good title. Plaintiff has been damaged by the actions of defendant BLACK.

28. Wherefore plaintiff demands judgement for the return of the subject diamond or it retail value together with cost of suit plus interest.

Isaac Stengel

Isaac Stengel

Pro Se

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ISAAC STENGEL                          :

      Plaintiff                      :

    -against-

BRADFORD BLACK                     :

      Defendant                  :
                       X

INDEX NO. 0411 6915

VERIFICATION

     ISAAC STENGEL, being duly sworn, deposes and says: I am the Plaintiff pro se in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on the information and belief and as to those matters I believe them to be true.

AFFIRMED
Dated: November 30, 2004
New York, NY

_Isaac Stengel_
ISAAC STENGEL

NEW YORK
COUNTY CLERK'S OFFICE

DEC 1 2004

NOT COMPARED
WITH COPY FILED

**EXHIBIT  D**

LEGAL EASE
LEGAEASE INC

## SUPREME COURT OF THE STATE OF NEW YORK – NEW YORK COUNTY

PRESENT:   **DEBRA A. JAMES**
                        *Justice*                                              **PART 59**

| | | |
|---|---|---|
| ISAAC STENGEL, | | Index No.: __116915/04__ |
| | Plaintiff, | Motion Date: __03/02/05__ |
| – v – | | Motion Seq. No.: __01__ |
| BRADFORD BLACK, | | Motion Cal. No.: __110__ |
| | Defendant. | |

The following papers, numbered 1 to 5 were read on this motion to dismiss.

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/Order to Show Cause -Affidavits -Exhibits | 1, 2 |
| Answering Affidavits - Exhibits | 3 |
| Replying Affidavits - Exhibits | 4, 5 |

Cross-Motion:  ☐ Yes  ☒ No

*FILED*

*AUG 0 2 2005*

*NEW YORK*
*COUNTY CLERKS OFFICE*

Upon the foregoing papers,

Defendant moves to dismiss this action under CPLR 3211 (a) (8) on the grounds of lack of personal jurisdiction. Plaintiff opposes the motion.  The court shall grant the motion for the reasons that follow.

This action arises out of a claim by plaintiff pro se that defendant is improperly retaining a diamond which belongs to plaintiff.  Plaintiff alleges that he delivered possession of the diamond to one David Rosental in November 2001 for possible purchase by the defendant and that upon receipt of the diamond the defendant refused to return it.

Check One:   ☒ FINAL DISPOSITION       ☐ NON-FINAL DISPOSITION
Check if appropriate:   ☐ DO NOT POST       ☐ REFERENCE

**MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):**

05  08:14    12123939796          LEGAL EASE              PAGE  03/04
/06/2005  07:07    9147471972          LEGAEASE INC            PAGE  02

Plaintiff argues that David Rosental acted as an agent of the defendant and that plaintiff transferred the diamond to Rosental for inspection by plaintiff and that the transaction took place in New York.

The court finds that plaintiff has failed to carry the burden of establishing that this court has personal jurisdiction over the defendant.  "[T]he burden rests on plaintiff as the party asserting jurisdiction. We have stated that the test is whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy.  However, mere solicitation of business within the state does not constitute the transaction of business within the state, unless the solicitation in New York is supplemented by business transactions occurring in the state, or the solicitation is accompanied by a fair measure of the defendant's permanence and continuity in New York which establishes a New York presence." O'Brien v Hackensack University Medical Center, 305 AD2d 199, 200-201 (1st Dept 2003) (citations and internal quotations omitted).

Defendant's affidavit in support of the motion sets forth that the defendant does not practice medicine in this State, has not transacted business in this State with reference to the subject diamond, does not own property in the State, and has no regular contact with this State.  Defendant states that he

-2-

₅₅ 08:14   12123939796   LEGAL EASE                    PAGE  04/04
₆/06/2005 07:07   9147471972   LEGAEASE INC              PAGE  03

purchased the subject diamond from David Rosental on or about May 26, 2000, via telephone from Ohio, that the diamond was delivered to the defendant in Ohio where it remains and that payment was made via an Ohio bank.  Plaintiff's sole allegation is that David Rosental acted as an agent of the defendant.  However, plaintiff presents no evidence to support this assertion.

On these facts, there is no basis for this court to exercise personal jurisdiction over the defendant.  See O'Brien, supra. The court shall therefore grant the motion and dismiss the complaint. It is therefore,

ORDERED and ADJUDGED that defendant's motion to dismiss for lack of personal jurisdiction is GRANTED, the complaint is DISMISSED, and the Clerk is directed to enter judgment accordingly.

This is the decision and order of the court.

Dated:   June 29, 2005                        ENTER:

FILED
AUG 0 2 2005
NEW YORK
COUNTY CLERKS OFFICE

_____ J.S.C.

**DEBRA A. JAMES**
**J.S.C.**

-3-

**EXHIBIT E**

Andrias, J.P., Saxe, Williams, Sweeny, McGuire, JJ.

8412     In re Isaac Stengel,        Index 116915/04
            Petitioner-Appellant,

             -against-

        Bradford Black,
            Respondent-Respondent.

---

Isaac Stengel, appellant pro se.

Solomon Pearl Blum Heymann & Stich LLP, New York (Jill H. Teitel
of counsel), for respondent.

---

Order, Supreme Court, New York County (Debra A. James, J.),
entered August 2, 2005, which granted defendant's motion to
dismiss the complaint for lack of personal jurisdiction,
unanimously affirmed, without costs.

This action is based on the Ohio defendant's purchase of a
diamond that plaintiff alleges both belonged to him and was sold
without his consent.  The allegations do not support jurisdiction
over defendant by virtue of his continuous and systematic
contacts with New York to satisfy the "doing business" test of
CPLR 302(a)(3)(i) (*see Landoil Resources Corp. v Alexander &
Alexander Servs.*, 77 NY2d 28, 33-34 [1990]).  Nor is there any
basis on which to invoke New York's long-arm jurisdiction (CPLR
302[a][1]).  An out-of-state phone call to New York for the
purpose of purchasing an item here, and defendant's subsequent

48

transfer of payment to New York, do not constitute the active participation in business transactions that would require him to defend himself in our courts (*see Rothschild, Unterberg, Towbin v McTamney*, 89 AD2d 540 [1982], *affd* 59 NY2d 651 [1983]; *Katz & Son Billiard Prods. v Correale & Sons*, 26 AD2d 52 [1966], *affd* 20 NY2d 903 [1967]; *cf. Parke-Bernet Galleries v Franklyn*, 26 NY2d 13 [1970]).

We have considered plaintiff's remaining arguments and find them without merit.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED:  APRIL 27, 2006

*Catherine O'Hagan Wolfe*
_____
CLERK

**EXHIBIT F**



# COURT OF COMMON PLEAS
# COLUMBIANA COUNTY, OHIO
### Case Number: 2005 CV 1271
### Judge: C. Ashley Pike



COLUMBIANA COUNTY
COURT OF COMMON PLEAS

DEC 2 9 2005

ANTHONY J. DATTILIO
CLERK          (TRB)

ISAAC STENGEL
11 West 47TH Street
New York City, NY 10036

       Plaintiff,

     vs.,

BRADFORD BLACK
2260 Southeast Boulevard
Salem, Ohio 44460

       Defendant

**COMPLAINT**
Other Tort
Unjust Enrichment
Conversion
No Good Title
Jury demanded in accordance with the
Ohio Civil Rule 38

---------------------------------------------------------------------------------

      Plaintiff, as and for his complaint against defendant alleges as follows:

1. Title of case 3C.
2. At all times herein- mentioned plaintiff, Isaac Stengel, is and was employed in business in the County of New York City, and State of New York at 11 West 47th Street, New York City, NY 10036.

3. At all times herein-mentioned defendant BLACK was a resident of the State OHIO at 2360 Southeast Boulevard Salem, Ohio 44460, and engaged in purchasing diamonds in the Borough of Manhattan, County of New York.

4. At all times herein-mentioned plaintiff was a dealer regularly engaged in the business of buying and selling diamonds and other precious stones and jewelry, and is the owner of the 5.10 emerald cut shape carat GVS2 quality solitaire diamond. The retail value of which is $84,150.00, which is in the possession of the defendant BLACK and is the subject matter of this lawsuit.

2005 CV
01271
00077272162
c

5. That defendant BLACK had continuous dealing with diamond merchants in New York since 1981.

6. Subsequently, defendant BLACK established contact with a Mr. Rosental through the Wall Street Journal in the late 1980's early 1990's.

7. That defendant BLACK knew that Rosental was a broker- not an owner as he had advertised, and didn't own the diamonds, he charged a 5% commission on all his sales.

8. Upon information and belief, defendant had financial dealings with David Rosental, from the year 2000 through November 2002, and is subsequently the subject matter of this lawsuit.

9. Upon information and belief, defendant BLACK was aware of the questionable character of David Rosental.

10. Defendant BLACK's acceptance of subject diamond was a means of acquiring collateral from Rosental.

11. On November 26, 2001 plaintiff delivered to Rosental possession of the one 5.10 emerald cut shape carat GVS2 quality solitaire diamond, for a possible purchase by defendant BLACK.

12. Defendant BLACK was not a bona fide purchaser; he did not purchase the diamond, as he had every intention of returning the diamond.

13. Defendant BLACK's action was in violation of reasonable commercial standards of fair dealings in the trade. Defendant BLACK thereby enriched himself with plaintiff's property.

14. That when plaintiff learned of the fact that the defendant has possession of the subject diamond, on or about October 27, 2002, the plaintiff, demanded from the defendant the diamond or its monetary value.

15. That the defendant told plaintiff that he is holding subject diamond as collateral.

16.Plaintiff has been damaged by the actions of the defendant as to the retail value of $84,150.00.

**Wherefore** plaintiff demands judgement for return of the subject diamond or its retail value.

## FIRST CAUSE OF ACTION UNJUST ENRICHMENT

17.  Repeats and re alleges allegation 1 through 16.

18. Defendant BLACK, having dealing with Rosental advanced Rosental $63,617.00 for purchase of a diamond with certain specifications on May 2000.

19. After a period of time under pressure from Defendant BLACK, Rosental took a 5.10 ct. diamond from Plaintiff Stengel and sent it to Defendant BLACK.

20. Defendant BLACK not satisfied with Plaintiff Stengel's diamond moved before the court in OHIO and acquired a judgment against Rosental for the $63,617.00.

21. Not satisfied with the quality of plaintiff's diamond, Defendant BLACK continued to hold Plaintiff Stengel's diamond as addisional ransom.

22. During this time Defendant BLACK was fully aware that Rosental was dishonest and that Rosental did not own diamonds but acted as an agent. Defendant BLACK continued to hold plaintiff's diamond disregarding plaintiff's request for the return of the diamond.

23. Defendant BLACK'S action was in violation of reasonable commercial standards of fair dealings in the trade.  Defendant BLACK thereby enriched himself with plaintiff's property.

**Wherefore** plaintiff demands judgment for return of the subject diamond or its retail value.

## SECOND CAUSE OF ACTON CONVERSION

24. Repeats and re alleges allegations 1 through 23.

25. Defendant BLACK converted plaintiff's property.

26. Defendant BLACK willfully and knowingly converted plaintiffs property, as he was fully aware that Rosental did own the subject diamond.

27. Plaintiff has been damaged by defendant BLACK'S conversion action.
   **Wherefore** plaintiff demands judgment for return of the subject diamond or its retail value.

## THIRD CAUSE OF ACTION FAILURE TO ACQUIRE GOOD TITLE

28. Repeats and re alleges allegations 1 through 27.

29. Plaintiff never issued an invoice transferring title to Rosental.

30. Defendant BLACK in prior court record testified that he never acquired title, as Rosental did not issue him an invoice.

31. Defendant BLACK was fully aware of the fact that Rosental was a thief who did not own any diamonds.

32. Defendant BLACK made no effort to learn who the owner of the subject diamond was.

33. Defendant BLACK had no intention of acquiring good title as he wanted his $63,617.00. back from Rosental. Plaintiff has been damaged by the actions of defendant BLACK.
**Wherefore** plaintiff demands judgment for the return of the subject diamond or it retail value together with cost of suit plus interest.

Isaac Stengel
Pro Se

# COMPLAINT

## FIRST CLAIM
### *(Breach of Contract)*

1.     Plaintiff, Bradford Black, is an individual residing at 2777 Carrington Street, N.W., Stark County, North Canton, Ohio 44720.

2.     Defendant Kohinoor International, Ltd., ("Kohinoor") now is, and at all times mentioned was, a corporation duly organized and existing under the laws of the State of New York.

3.     Defendant Gemfish International, Ltd. ("Gemfish") now is, and at all times mentioned was, a corporation duly organized and existing under the laws of the State of New York.

4.     Defendant David Rosental was, and still is, an individual with a business address at One Lincoln Plaza, New York, New York 10023, and at all times was the principal and alter ego of Defendants Kohinoor and Gemfish, whose corporate form he disregarded in furtherance of his fraudulent purposes as set forth herein.

5.     On or about May 26, 2000, Plaintiff entered into a contract with Defendants. Said contract provided that, in return for Plaintiff paying Defendants SIXTY-THREE THOUSAND SIX HUNDRED SEVENTEEN DOLLARS ($63,617), Defendants would provide a certain diamond gem stone to Plaintiff.

6.     Defendants have contacted Plaintiff in Stark County, Ohio and delivered the diamond gem stone to Plaintiff in Ohio. Moreover, Defendants have done and are doing business in Ohio, and one or more of the Defendants, in the past, has sold jewelry to Plaintiff.

7.     Defendants knew that Plaintiff was seeking a replacement stone for an original diamond which had been lost. The original diamond had been sold by one or more of the Defendants to Plaintiff. Defendants represented that they had a replacement diamond of equal value.

quality and color based on Plaintiff providing to Defendant his original diamond GIA certificate and based on the fact that one or more of the Defendants had sold to Plaintiff the original diamond.

8.     On or about May 26, 2000, Plaintiff wired to Defendants SIXTY-THREE THOUSAND SIX HUNDRED SEVENTEEN DOLLARS ($63,617) in connection with Plaintiff's contract with Defendants

9.     Defendants provided a diamond stone, in breach of their contract with Plaintiff, which was not of equal value due to the inferior quality and color

10.    An independent appraisal of the diamond provided by Defendants has determined that the value of the diamond provided by Defendants is nearly fifty to sixty percent (50-60%) less than the value of the original diamond.

11.    Defendants have breached their agreement with Plaintiff by failing to provide the required quality of diamond.

12     Plaintiff has performed all its obligations under said contract with Defendants.

13.    As a result of the breach of contract by the Defendants, Plaintiff has demanded recision of his contract with Defendants, including the return of his SIXTY-THREE THOUSAND SIX HUNDRED SEVENTEEN DOLLARS ($63,617) with Plaintiff agreeing to return Defendants' diamond to Defendants.

14.    Defendants have refused to return Plaintiff's money and accept the return of Defendants' diamond.

15.    As a result of the actions of the Defendants, Plaintiff has been damaged in an amount in excess of THIRTY-TWO THOUSAND DOLLARS ($32,000).

GEMA\Black\Brad's\edgel\Campbir\docket

3

## SECOND CLAIM
*(Recision)*

16.     For his Second Claim, Plaintiff realleges all allegations as set forth in the First Claim hereinabove stated.

17.     Defendants represented to Plaintiff that they have provided a diamond of the quality and color to the original diamond that Plaintiff lost in return for Plaintiff paying the sum of SIXTY-THREE THOUSAND SIX HUNDRED SEVENTEEN DOLLARS ($63,617).

18.     This representation was material and false.

19.     Plaintiff reasonably relied on the truth of this representation made by the Defendants in making the contract and paying the full purchase price for Defendants' diamond.

20.     By reason of the misrepresentation of the Defendants, Plaintiff received a diamond that was substantially less in value than promised by the Defendants.

21.     Defendants knew that the diamond being provided by them was of an inferior quality and color and that it was not worth the amount of money which Plaintiff was required to pay.

22.     Plaintiff has no adequate remedy at law.

23.     Plaintiff is ready to return to Defendants the diamond in return for the purchase price of SIXTY-THREE THOUSAND SIX HUNDRED SEVENTEEN DOLLARS ($63,617), but Defendants have refused to return the monies in exchange for the diamond.

24.     As a result of the false representations made by Defendants, Plaintiff has incurred attorneys' fees in an amount not yet ascertained.

## THIRD CLAIM
*(Misrepresentation)*

25.     For his Third Claim herein, Plaintiff realleges all allegations set forth in the First and Second Claims hereinabove stated.

G:\MATT\Black\ tradford\pdf\Complaint.done

4

26.    Defendants represented to Plaintiff that they would provide a diamond stone of like quality and color to that which Plaintiff had lost.

27.    In reliance upon the representations, Plaintiff paid to Defendants the sum of SIXTY-THREE THOUSAND SIX HUNDRED SEVENTEEN DOLLARS ($63,617) for Defendants' diamond.

28.    Defendants' representations as to the quality of Defendants' diamond false, and in fact, said diamond was worth only approximately fifty to sixty percent (50-60%) of diamond which Plaintiff had lost.

29.    Defendants knew their representations as made were false and were done with intent by Defendants to secure payment from Plaintiff.

30.    Plaintiff would not have paid Defendants SIXTY-THREE THOUSAND SIX HUNDRED SEVENTEEN DOLLARS ($63,617) had the Defendants not made the false representations as set forth above.

31.    As a result of the false representations of Defendants, Plaintiff has been damaged in an amount in excess of THIRTY-TWO THOUSAND DOLLARS ($32,000).

32.    Furthermore, as a result of the misrepresentations by Defendants, Plaintiff has incurred attorneys' fees, and will continue to incur attorneys' fees, all as a result of the actions of the Defendants. The amount of said attorneys' fees is not yet known and will be presented at trial of the within matter.

## FOURTH CLAIM
*(Piercing the Corporate Veil)*

33.    For his Fourth Claim, Plaintiff realleges all allegations as set forth in the First, Second and Third Claims hereinabove stated.

34.   Defendant Rosental's control and domination over Defendants Kohinoor and Gemfish was so complete that Kohinoor and Gemfish had no separate mind, will, or existence of its own.

35.   Defendant Rosental's control over Defendants Kohinoor and Gemfish was exercised in such a manner as to commit fraud against Plaintiff.

36.   As a direct and proximate result of Defendant Rosental's control over Defendants Kohinoor and Gemfish, Plaintiff suffered extensive damages as set forth above.

37.   As a result of Defendant Rosental's control over Defendants Kohinoor and Gemfish, Defendant Rosental is personally liable for any judgment rendered against Defendants Kohinoor and Gemfish.

38.   As a result, Plaintiff is entitled to an order declaring that Defendant Rosental and Defendants Kohinoor and Gemfish are jointly and severally liable in its individual and corporate capacity for any judgment rendered against Defendants Kohinoor and Gemfish at trial.

WHEREFORE, Plaintiff, Bradford Black, has demanded judgment against the Defendants, Kohinoor International, Ltd., Gemfish International, Ltd., and David Rosental, for compensatory damages in excess of THIRTY-TWO THOUSAND DOLLARS ($32,000); punitive damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000); an order of this Court for the cancellation of the contract between the parties; an order of the Court for restoration of the purchase price paid by Plaintiff to Defendants; reasonable attorneys' fees in an amount not yet ascertained; and interest, costs and other and further relief as may be proper.

_____
Michael A. Thompson (0016874), of
KRUGLIAK, WILKINS, GRIFFITHS
& DOUGHERTY CO., L.P.A.
4775 Munson Street, N.W.
P.O. Box 36963
Canton, Ohio 44735-6963
Phone: (330) 497-0700
Fax: (330) 497-4020
ATTORNEYS FOR PLAINTIFF,
BRADFORD BLACK

## DEMAND FOR TRIAL BY JURY

Plaintiff, Bradford Black, hereby demands a trial by jury of all issues of fact herein contained.

_____
Michael A. Thompson (0016874), of
KRUGLIAK, WILKINS, GRIFFITHS
& DOUGHERTY CO., L.P.A.
ATTORNEYS FOR PLAINTIFF,
BRADFORD BLACK

## INSTRUCTIONS FOR SERVICE

TO THE CLERK OF COURTS:

Please issue Summons together with a copy of the foregoing Complaint by certified mail, return receipt requested, on the Defendants at the addresses as set forth in the caption above.

_____
Michael A. Thompson (0016874), of
KRUGLIAK, WILKINS, GRIFFITHS
& DOUGHERTY CO., L.P.A.
ATTORNEYS FOR PLAINTIFF
BRADFORD BLACK

G:\MAT\Black, Bradford\pl\Complaint.doc:ri

EXHIBIT "B"



ORIGINAL

CLERK OF COURTS
STARK COUNTY, OHIO

02 APR 12 PH 4: 21

IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

| | |
|---|---|
| **BRADFORD BLACK**<br>2777 Carrington Street, N.W.<br>North Canton, Ohio  44720, | **2002MI01294**<br><br>CASE NO. _____ |
| Plaintiff, | JUDGE _____ *Haas* |
| vs. | TYPE:  BREACH OF<br>CONTRACT/FRAUD/RECISION |
| **KOHINOOR INTERNATIONAL, LTD.**<br>One Lincoln Plaza<br>New York, New York 10023, | *(Jury Demand Endorsed Hereon)* |
| And | |
| **GEMFISH INTERNATIONAL, LTD.**<br>One Lincoln Plaza<br>New York, New York 10023, | |
| And | |
| **DAVID ROSENTAL.**<br>One Lincoln Plaza<br>New York, New York  10023, | |
| Defendants. | |

G:\MATT\Black...sttsd ford\p00 complaint doc.txt

FILED

AUG 02 2002

PHIL G. GIAVASIS
STARK COUNTY OHIO
CLERK OF COURTS

## IN THE COURT OF COMMON PLEAS
## STARK COUNTY, OHIO

BRADFORD BLACK,

      Plaintiff,

    vs.

KOHINOOR INTERNATIONAL,
LTD., et al.,

      Defendants.

CASE NO. 2002CV01294

JUDGE JOHN G. HAAS

## JUDGMENT ENTRY

      Plaintiff, Bradford Black, having filed a Motion seeking default judgement against the Defendants, Kohinoor International, Ltd., Gemfish International, Ltd., and David Rosenthal, and it appearing to the Court that the Defendants are in default for answer or appearance, this Court finds the allegations in the Complaint set forth are confessed by the Defendants to be true, and this Court finds on the issues joined in favor of the Plaintiff.

      IT IS, therefore, ORDERED, ADJUDGED and DECREED, that the Plaintiff, Bradford Black, be granted default judgment against the Defendants, , Kohinoor International, Ltd., Gemfish International, Ltd., and David Rosenthal, as follows:

1.    For judgment against the Defendants in the amount of SIXTY-THREE THOUSAND SIX HUNDRED SEVENTEEN DOLLARS ($63,617), plus interest at the rate of ten percent (10%) per annum from May 26, 2000;

2.    For Plaintiff's costs herein expended.

_____
JUDGE

A TRUE COPY TESTE:
PHIL G. GIAVASIS, CLERK
By _____ Deputy
Date 8-2-02

APPROVED BY:

_____
Michael A. Thompson (0016874), of
KRUGLIAK, WILKINS, GRIFFITHS
   & DOUGHERTY CO., L.P.A.
4775 Munson Street, N.W.
P.O. Box 36963
Canton, Ohio  44735-6963
Phone:  (330) 497-0700
Fax:  (330) 497-4020
ATTORNEYS FOR PLAINTIFF,
BRADFORD BLACK

Michael A. Thompson (0016874), of
KRUGLIAK, WILKINS, GRIFFITHS
  & DOUGHERTY CO., L.P.A.
4775 Munson Street, N.W.
P.O. Box 36963
Canton, Ohio 44735-6963
Phone: (330) 497-0700
Fax: (330) 497-4020
ATTORNEYS FOR PLAINTIFF,
BRADFORD BLACK

*COPY FROM BRADFORD BLACK'S DEPOSITION*

*N.Y.*

60

Black

1    Q.    So you accepted the stone; is that

2    correct?

3    A.    I wouldn't say I really accepted it.

4    We didn't really want anything to do with him,

5    but we got something in return for our money, I

6    guess, is the best --

7    Q.    You had no choice, right.

8    A.    I didn't -- after all this length of

9    time, we were just glad we got something.

10   Q.    So this is what you got, and did he

11   call you up after that -- when you called him

12   up, he told you it's too late, it's yours?

13   A.    Basically.

14   Q.    So you accepted it, rather than

15   nothing?

16   A.    (( No, I didn't accept it. ))

17   Q.    Did you buy it or you didn't buy it?

18   A.    He had our money and we had this

19   stone, but we didn't really accept it, we

20   didn't really want it.

21   Q.    So what -- so you called him and

22   said you're not happy and he told you that you

23   have to keep it?

24        MR. SEMACK:  That's been asked and

25        answered.

50

Black

```
 1        A.    I don't know if they called it
 2   opening it, but the FBI looked into him.
 3        Q.    What did they tell you, the FBI?
 4        A.    They found a couple of other people
 5   who had bought stones that he had done the same
 6   thing to.
 7        Q.    After you found out that, what did
 8   you think, you still could get some money out
 9   of him?
10        A.    I don't know.  Just do the best you
11   can, I guess.
12        Q.    What did they tell you, the FBI?
13        A.    They found some other people and
14   they were doing whatever they normally do.
15        Q.    What did they do?
16        A.    I guess eventually he said they
17   contacted the -- I forget what the title is,
18   the postal authorities or whatever, I forget
19   what the title of that person is, and I guess
20   that's about it.
21        Q.    And they couldn't do anything?
22   Isn't this fraud -- interstate fraud?
23        A.    I don't remember exactly what we
24   said, but I just know eventually that they had
25   a lot of other problems going on, and so it was
```

58

Black

1      A.    Yeah.

2      Q.    I imagine so, it probably looked

3  gorgeous, no?

4      A.    It had a blue cast to it, I don't

5  think it was as good as the other stone, so we

6  actually were not really pleased with the

7  stone.

8      Q.    Did he write how much it was worth

9  when he sent you the diamond, David?

10      A.    I don't know if he did or not.

11      Q.    So why weren't you satisfied?

12      A.    Because it was highly blue

13  refringent or whatever they call it, blue

14  effervescence or whatever.

15      Q.    Yes.

16      A.    So it just wasn't the same quality

17  of stone.

18      Q.    And you called back David?

19      A.    Yup.

20      Q.    And what did he say?

21      A.    I said I didn't like it and I wanted

22  the money.

23      Q.    What did he tell you?

24      A.    He said it was too late, I already

25  bought it -- or I bought it and that was it.

**EXHIBIT G**

SEP'01 2006

PHIL G. GIAVASIS
STARK COUNTY, OHIO
CLERK OF COURTS

## IN THE COURT OF COMMON PLEAS
## STARK COUNTY, OHIO

| | | |
|---|---|---|
| ISAAC STENGEL, | : | CASE NO. 2006CV01243 |
| | : | |
| Plaintiff, | : | JUDGE CHARLES E. BROWN, JR. |
| | : | |
| vs. | : | JUDGMENT ENTRY GRANTNG |
| | : | DEFENDANT'S MOTION FOR |
| | : | SUMMARY JUDGMENT |
| BRADFORD BLACK, | : | |
| | : | |
| Defendant. | : | |

This matter came before the Court on Defendant's Motion for Summary Judgment, filed August 4, 2006. The Court filed an Assignment Notice on August 8, 2006, setting a Non-Oral Hearing on the Defendant's Motion for September 1, 2006. Plaintiff's Response was due on or before August 21, 2006.

The Court received a fax from the Plaintiff on August 16, 2006, requesting an additional ten days within which to file a Response, i.e. until August 31, 2006. Said fax was retrieved from the fax machine located in the Administrative Office. Plaintiff never filed the request for the extension of time with the Clerk of Courts by either ordinary mail or fax filing. The Court, therefore, filed with the Clerk of Courts on August 30, 2006, the faxed copy of Plaintiff's request it received from the fax machine in the Administrative Office.

Notwithstanding Plaintiff's failure to properly file his request for an extension of time, the Court has granted Plaintiff's request for an additional ten days within which to file a Response to the Defendant's Motion for Summary Judgment and Plaintiff has failed to do so. Therefore, the Court finds no reason to delay ruling upon the Defendant's Motion for Summary Judgment any longer.

1

A Non-Oral Summary Judgment Hearing was held on the Defendant's Motion.

Summary Judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The moving party must initially inform the trial court of the basis for its motion and identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett* (1986), 477 U.S. 317, citing with approval in *Wing v. Anchor Media Ltd. of Texas* (1991), 59 Ohio St.3d 108. See, also, *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth the specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

Civ.R. 56(E)

Once the moving party has satisfied his initial burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Vahila* at 1171, quoting *Dresher* at 293.

Upon review of the pleadings and supporting documents, the Court finds that there are no genuine issues of material fact. Therefore, the Court hereby grants Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Judge Charles E. Brown, Jr.

Copies To:    Isaac Stengel, Plaintiff Pro Se
              Chris T. Nolan, Esq.

2

**NOTICE TO THE CLERK:**
**FINAL APPEALABLE ORDER**

IT IS HEREBY ORDERED that notice of the foregoing Judgment Entry shall be served on all parties of record within three (3) days after docketing of this Entry and the service shall be noted on the docket.

Judge Charles E. Brown, Jr.

3

**EXHIBIT  H**

FILED

SEP 13 2006

PHIL G. GIAVASIS
STARK COUNTY OHIO
CLERK OF COURTS

## IN THE COURT OF COMMON PLEAS
## STARK COUNTY, OHIO

| | | |
|---|---|---|
| ISAAC STENGEL, | : | CASE NO. 2006CV01243 |
| Plaintiff, | : | JUDGE CHARLES E. BROWN, JR. |
| vs. | : | JUDGMENT ENTRY DENYING |
| | : | PLAINTIFF'S MOTION FOR |
| | : | RELIEF FROM JUDGMENT |
| BRADFORD BLACK, | : | |
| Defendant. | : | |

This matter came before the Court with regard to a letter dated, September 8, 2006, which was faxed by the Plaintiff to the Fourth Floor Administrative Office on September 8, 2006. Said letter was mailed to and received by the Court on September 12, 2006. The Court filed Plaintiff's letter with the Clerk of Courts on September 12, 2006.

Plaintiff moves the Court to treat the letter as a Motion to Vacate the Court's Order of September 1, 2006. Plaintiff mischaracterizes the Order of September 1, 2006, as an Order dismissing Plaintiff's Complaint by way of default. The September 1, 2006 Order was actually a Judgment Entry granting Defendant's Motion for Summary Judgment based upon Plaintiff's failure to file a timely Response to Defendant's Motion for Summary Judgment.

The procedural history is as follows: On August 4, 2006, Defendant filed his Motion for Summary Judgment. On August 8, 2006, the Court filed an Assignment Notice setting a briefing schedule with regard to the Motion for Summary Judgment. Plaintiff's Response was due on or before August 21, 2006. The Court received a fax from the Plaintiff on August 16, 2006, requesting an additional ten days within which to file a Response, i.e. until August 31, 2006. Said fax was retrieved from the fax machine located in the Administrative Office.

1

Plaintiff never filed the request for the extension of time with the Clerk of Courts by either ordinary mail or fax filing. The Court, therefore, filed with the Clerk of Courts on August 30, 2006, the faxed copy of Plaintiff's request that the Court retrieved from the fax machine in the Administrative Office. Notwithstanding Plaintiff's failure to properly file his request for an extension of time, the Court granted Plaintiff's request for an additional ten days within which to file a Response to the Defendant's Motion for Summary Judgment, i.e. until August 31, 2006, and Plaintiff failed to do so. Therefore, the Court found no reason to delay ruling upon the Defendant's Motion for Summary Judgment any longer and on September 1, 2006, the Court granted the Defendant's Motion for Summary Judgment and made said Entry a Final Appealable Order. On September 6, 2006, Plaintiff filed his Brief in Opposition to the Defendant's Motion for Summary Judgment.

Now before the Court is the Plaintiff's letter dated September 8, 2006. The Court will construe the Plaintiff's letter as a Motion for Relief from Judgment. To prevail on a motion for relief from judgment, the three requirements set forth in *GTE Automatic Elec., Inc. v. Arc Industries, Inc.,* (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, must be met. The requirements are that: (1) the party has a meritorious claim or defense to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civil Rule 60(B)(1) through (5); and (3) the motion is made within a reasonable time.

Civil Rule 60(B) states in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party
> or his legal representative from final judgment, order, or proceeding for
> the following reasons: (1) mistake, inadvertence, surprise or excusable
> neglect; (2) newly discovered evidence which by due diligence could not
> have been discovered in time for a new trial under Rule 59(B); (3) fraud,

2

misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

Upon review, the Court finds that in the instant case, the Plaintiff has not satisfied the requirements of Civil Rule 60(B), warranting relief from judgment. Plaintiff has not supported his Motion with any type of evidence other than his unsupported statements. See *Zindle v. Parker*, 1991 WL 70159 (Ohio App.5 Dist. 1991), citing with approval, *East Ohio Gas v. Walker* (1978), 59 Ohio App.2d 216, 220, 394 N.E. 2d 348, which states that the movant must support his or her claim of a defense with evidence of at least affidavit quality; see also, *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 21, stating, "Although a movant is not required to support its motion with evidentiary materials, the movant must do more than make bare allegations that he or she is entitled to relief."

Additionally, pursuant to *Kay v. Marc Glassman, Inc.* (12996), 76 Ohio St.3d 18, the Court finds that the Plaintiff is not entitled to an evidentiary hearing on this matter as the Court has found that Plaintiff's Motion does not allege operative facts which warrant relief pursuant to Civ.R. 60(B).

Therefore, the Court denies the Plaintiff's Motion for Relief from Judgment.

IT IS SO ORDERED.

Judge Charles E. Brown, Jr.

Copies To:     Isaac Stengel, Plaintiff Pro Se
               Chris T. Nolan, Esq.

3

**EXHIBIT  I**

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

ISAAC STENGEL

    Plaintiff-Appellant

-vs-

BRADFORD BLACK

    Defendant-Appellee

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Julie A. Edwards, J.

Case No. 2006CA00288

O P I N I O N

CHARACTER OF PROCEEDING:

Appeal from the Stark County Court of
Common Pleas, Civil Case No.
2006CV01243

JUDGMENT:

Dismissed in part and Affirmed in part

DATE OF JUDGMENT ENTRY:

APPEARANCES:

For Plaintiff-Appellant

ISAAC STENGEL, PRO SE
11 West 47th St.
New York, New York 10036

For Defendant-Appellee

CHRIS NOLAN
300 Courtyard Square
80 South Summit St.
Akron, Ohio 44308-1736

07 APR 16 PM 2:49
PHIL G. GIAVASIS
CLERK OF COURT OF APPEALS
STARK COUNTY OHIO

Stark County, Case No. 2006CA00288

2

*Hoffman, J.*

{¶1}   Plaintiff-appellant Isaac Stengel appeals the September 1, 2006 Judgment Entry Granting Defendant's Motion for Summary Judgment and the September 13, 2006 Judgment Entry denying relief from judgment, both entered by the Stark County Court of Common Pleas.  Defendant-appellee is Bradford Black.

{¶2}   Appellant appears before this Court pro se as he did before the trial court. The "brief" appellant submitted to this Court fails to conform to the requirements of App. R. 16(A) in numerous ways.  It fails to provide a table of contents, a table of cases and, most notably, a statement of the assignments of error presented for review with reference to the place in the record where each error is reflected.  Such non-compliance is sufficient reason for this Court to strike appellant's brief and dismiss this appeal for want of prosecution.  However, we elect not to do so.

## STATEMENT OF THE CASE AND FACTS[1]

{¶3}   Appellant filed his complaint against appellee, alleging Other Tort, Unjust Enrichment, Conversion and No Good Title on December 29, 2005, in the Columbiana County Court of Common Pleas.  The essence of the complaint alleged appellee has improperly retained a diamond owned by appellant which he (appellant) delivered to one David Rosental, as agent for appellee.  Appellee answered appellant's complaint, asserting he paid Rosental for a diamond which proved to be of unsatisfactory quality and obtained a judgment against Rosental in the amount of $63,617.  Appellee claims lack of knowledge whether the diamond he purchased from Rosental is, in fact, the

---

[1] A full rendition of the facts is unnecessary for our resolution of this appeal.

Stark County, Case No. 2006CA00288

3

same diamond appellant delivered to Rosental. In addition, appellee proffered twelve affirmative defenses.

{¶4} Via Judgment Entry filed March 16, 2006, the Columbiana County Court of Common Pleas transferred the case to the Stark County Court of Common Pleas based upon appellee's Motion for a Change of Venue.

{¶5} On August 4, 2006, appellee filed a Motion for Summary Judgment supported by accompanying memorandum, affidavit of appellee and exhibits. On August 8, 2006, via Assignment Notice, the trial court, notified appellant of a **"NON-ORAL SUMMARY JUDGMENT HEARING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO BE HELD ON SEPTEMBER 1, 2006 AT 9:00AM. RESPONSIVE BRIEF DUE ON OR BEFORE: AUGUST 21, 2006. REPLY BRIEF DUE ON OR BEFORE; AUGUST 31, 2006."** The notice further advised the hearing was non-oral, neither party's presence was required, and the trial court would rule upon the briefs properly filed.

{¶6} Appellant failed to file a responsive brief on or before the due date of August 21, 2006. However, the trial court became aware of a faxed letter from appellant on August 16, 2006, requesting an additional 10 days to respond to appellee's motion for summary judgment. The fax was not filed as a motion. It was addressed to Ryan W. Reaves, Administrative Assistant to the court. The letter was filed with the clerk by the trial court on August 30, 2006. Despite the lack of a properly filed motion, the trial court gratuitously granted appellant's request for an additional ten days to file a response, but appellant failed to timely do so. Thereafter, the trial court filed its Judgment Entry Granting Defendant's Motion for Summary Judgment on September 1,

2006. Notice of that judgment dated September 5, 2006, was sent by the clerk to appellant.

{¶7}    On September 6, 2006, appellant filed his Affidavit in Opposition to Motion for Summary Judgment to Dismiss and in Support of Cross Motion for Summary Judgment by Plaintiff pro se. Thereafter, appellant sent a letter dated September 8, 2006, to the trial court. The trial court again filed this correspondence with the clerk on September 12, 2006. In the letter, appellant acknowledged receipt of the trial court's September 1, 2006 entry, and requested the trial court treat this "informal correspondence" as a motion to vacate its order. The trial court again gratuitously treated appellant's letter as a properly filed motion for relief from judgment, but denied the same via Judgment Entry filed September 13, 2006. On October 11, 2006, appellant filed his notice of appeal, identifying the trial court's dismissal of the complaint entered as of right on September 7 [sic], 2006, and the denial of rehearing [motion to vacate] entered on September 13, 2006. Appellant's docketing statement identified the date of the judgment being appealed as 09/01/2006, and attached a copy of the trial court's September 13, 2006 entry as well as a portion of the September 1, 2006 entry.

{¶8}    Appellant failed to timely appeal the trial court's September 1, 2006 entry. A motion for relief from judgment is not a substitute for a timely filed notice of appeal. Accordingly, we dismiss appellant's appeal of the trial court's September 1, 2006 judgment entry for want of jurisdiction.

{¶9}    As to the trial court's September 13, 2006 entry, we find the trial court did not abuse its discretion in denying appellant's "informal" motion for relief from judgment. On several occasions, the trial court filed letters with the clerk which appellant failed to

Stark County, Case No. 2006CA00288

5

do himself.  On two occasions, the trial court gratuitously treated letters from appellant as properly filed motions.  And, despite adequate notice and the trial court's granting appellant the additional time he requested to respond to appellee's summary judgment motion, appellant still failed to timely respond.  The trial court did not abuse its discretion in denying appellant relief from judgment as no excusable neglect exists.  Pro se status cannot be used as a shield to circumvent the rules of procedure or orders of the court.  Appellant had ample opportunity to present the merits of his dispute.  His failure to timely do so renders him the architect of his own demise.

{¶10}  The trial court's September 13, 2006 judgment entry is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Edwards, J. concur

_____
HON. WILLIAM B. HOFFMAN

_____
HON. W. SCOTT GWIN

_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

ISAAC STENGEL

    Plaintiff-Appellant

-vs-

BRADFORD BLACK

    Defendant-Appellee

:
:
:
:
:
:
:
:
:
:

JUDGMENT ENTRY

Case No. 2006CA00288

    For the reasons stated in our accompanying Memorandum-Opinion, appellant's appeal of the September 1, 2006 judgment entry of the Stark County Court of Common Pleas is dismissed.  The court's September 13, 2006 judgment entry is affirmed.  Costs assessed to appellant.


_____
HON. WILLIAM B. HOFFMAN

_____
HON. W. SCOTT GWIN

_____
HON. JULIE A. EDWARDS

**EXHIBIT  J**

# The Supreme Court of Ohio

FILED

SEP 26 2007

CLERK OF COURT
SUPREME COURT OF OHIO

| | |
|---|---|
| Isaac Stengel | Case No. 2007-0979 |
| v. | E N T R Y |
| Bradford Black | |

Upon consideration of the jurisdictional memoranda filed in this case, the Court declines jurisdiction to hear the case.

(Stark County Court of Appeals; No. 2006CA00288)

THOMAS J. MOYER
Chief Justice