SOLOMON PEARL BLUM HEYMANN & STICH LLP
Attorneys for Defendant
Bradford Black
40 Wall Street-35th Floor
New York, New York 10005
(212) 267-7600
David P. Stich (DPS #9096)
Jill H. Teitel (JHT #8559)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

ISAAC STENGEL                          :    08 Civ. 00416 (GEL)

                                       :

                 Plaintiff,            :

      -against-                        :

                                       :

BRADFORD BLACK                         :

                 Defendant.            :

- - - - - - - - - - - - - - - - - X

STATE OF OHIO          )
                       )ss:
COUNTY OF STARK        )


        BRADFORD BLACK, being duly sworn, hereby deposes and

says:


        1.    I am the defendant named in this action.  I make

this affidavit in support of my motion for an order dismissing

this action against me.

        2.    I restate and reiterate all of the statements I

made in all of my affidavits submitted before this Court in

connection a prior federal action filed by the Plaintiff entitled, Stengel v. Black, 03 Civ. 0495 (GEL) (hereinafter, the "First Federal Action") and in connection with the New York Supreme Court case of Stengel v. Black, Index No. 116915/04 (Justice Debra James presiding) and repeat and restate the testimony given at my deposition in the First Federal Action on January 12, 2004 (hereinafter, the "Deposition Testimony"). See Exhibit A annexed hereto.

3.    As discussed in my Affidavit submitted in the First Federal Action and in my Deposition Testimony, on or about May 26, 2000, I agreed through a gentlemen name David Rosental, to purchase a diamond for the purchase price of $63,617.00. I negotiated the terms of the purchase by telephone from Ohio. Rosental delivered the diamond to me in Ohio. I paid for the diamond from Ohio and from an Ohio bank. Thus, no part of my activities with respect to my purchase of the diamond took place in New York.

4.    More than two years after my purchase of the diamond from Mr. Rosental, on or about October 22, 2002, I received a letter from an attorney for the plaintiff, Melvin H. Bernheimer, alleging that I was in possession of the plaintiff's diamond. The letter from Mr. Bernheimer was the first

2

indication I ever had that there was any question as to the ownership of the diamond prior to my purchase.

5.    Other than the October 22, 2002 letter, I had never before heard of the plaintiff; I have never spoken to plaintiff; plaintiff was not part of my transaction with Mr. Rosental; and I have never entered into any contract with the plaintiff.

6.    I had a telephone conversation with the Plaintiff, Stengel in late- 2002, shortly after I received the letter from Mr. Bernheimer where Plaintiff asked me to return the diamond to him or give him money for the diamond and I refused.  I told Plaintiff that the diamond was rightfully mine.

7.    I still practice medicine as a Urologist only in the State of Ohio, where I am licensed.  I am not licensed as a doctor in New York and have never practiced medicine there nor have I ever had an office of any kind in New York.  I have never treated any patients nor practiced medicine of any kind in the State of New York.

8.    I still do not have any other profession other than my practice as a medical doctor in Ohio.  I do not engage in any other businesses.  I do not derive any revenue from any interstate or international business.

9.    I do not own or lease any real property in the State of New York.

10.    I do not have a New York telephone number.

11.    I do not have a bank account with a New York bank.

12.    Moreover, the diamond which is the subject of this action is in Ohio.

13.   Accordingly, I have no connection with the State of New York so that I could ever anticipate being brought into Court in that jurisdiction by this Plaintiff, and request that this action be dismissed against me.


Dated:        February 6, 2008
              _Alliance_ , Ohio

                                   _____
                                   DR. BRADFORD BLACK


Sworn to before me this
6th day of February, 2008

_____
        Notary Public
My Commission Expires
     9-16-2012

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - X

ISAAC STENGEL                          :

                    Plaintiff,         :     Index No.
                                             04/16915
     -against-                         :

                                       :     **AFFIDAVIT**

BRADFORD BLACK                         :

                    Defendant.         :

- - - - - - - - - - - - - - - - - X

STATE OF OHIO        )
                     )ss:
COUNTY OF STARK      )

      BRADFORD BLACK, being duly sworn, hereby deposes and says:

    1.   I am the defendant named in this action.  I make this affidavit in support of my motion for an order dismissing this action against me. A copy of the Verified Complaint in this action is annexed hereto as Exhibit A.

    2.   I was also the defendant in the following action which was also brought against me by the same plaintiff regarding the same facts as alleged herein:

**Isaac Stengel v. Bradford Black**, 03Civ0495 (GEL), United States District Court for the Southern District of New York (the

Prior Action"). The Prior Action was originally dismissed for lack of personal jurisdiction with leave to refile, and was ultimately dismissed for lack of subject matter jurisdiction. A copy of the Complaint, the Amended Complaint, the Order dismissing the Prior Action for lack of personal jurisdiction and the Order dismissing the Prior Action for a lack of subject matter jurisdiction are collectively annexed hereto as Exhibit B.

3.   As I have previously shown in the Prior Action and as shown below, I have no connection with the State of New York. Accordingly, I request that this action be dismissed.

4.   Attached hereto as Exhibit C are the following items which were exchanged during the course of discovery in connection with the District Court Action: (a) relevant pages and exhibits from the transcript deposition testimony of Isaac Stengel taken at his deposition on January 12, 2004 and (b) relevant pages and exhibits from the transcript deposition testimony of Dr. Bradford Black taken at his deposition on January 12, 2004.

5.   On or about May 26, 2000, I agreed through a gentlemen name David Rosental, to purchase a diamond for the purchase price of $63,617.00. I negotiated the terms of the purchase by telephone from Ohio. Rosental delivered the diamond to me in

2

Ohio.  I paid for the diamond from Ohio, from an Ohio bank.

Thus, no part of my activities with respect to my acquisition

took place in New York.

6.    At no time did Mr. Rosental give me any

indication that anyone else had any ownership interest in the

diamond.  Nor was I ever given any indication that Mr. Rosental

had anything less than sole and exclusive authority to sell the

diamond.

7.    Subsequently, I had an independent appraiser

value the diamond.  His appraisal showed that the diamond Mr.

Rosenthal sold to me was worth substantially less than the

amount I paid for it.

8.    As a result, I commenced a lawsuit in Ohio

against Mr. Rosental and his related entities (Kohinoor

International Ltd. and Gemfish International, Ltd.).  If I

believed anyone else had any interest in the diamond prior to

the sale I would have made them a party to the suit.

9.    More than two years after my purchase of the

diamond from Mr. Rosental, on or about October 22, 2002, I

received a letter from an attorney for the plaintiff, Melvin H.

Bernheimer, alleging that I was in possession of the plaintiff's

diamond.  The letter from Mr. Bernheimer was the first

3

indication I ever had that there was any question as to the ownership of the diamond prior to my purchase.

10.    After receipt of the October 22, 2002 letter and prior to the District Court Action, I called plaintiff's attorney once in response to the October 22, 2002 letter; I had never before heard of the plaintiff; I have never spoken to plaintiff; plaintiff was not part of my transaction with Mr. Rosental; and I have never entered into any contract with the plaintiff.

11.    I am an urologist duly licensed to practice medicine only in the State of Ohio.  I am not licensed as a doctor in New York and have never practiced medicine there nor have I ever had an office of any kind in New York.  I have never treated any patients nor practiced medicine of any kind in the State of New York.

12.    I have no other profession other than my practice as a medical doctor in Ohio.  I do not engage in any other businesses.  I do not derive any revenue from any interstate or international business.

13.    I do not own or lease any real property in the State of New York.

14.    I do not have a New York telephone number.

15.  I do not have a bank account with a New York bank.

16.  Moreover, the diamond which is the subject of this action is in Ohio.

17.  Accordingly, I have no connection with the State of New York so that I could ever anticipate being brought into Court in that jurisdiction by this plaintiff, and request that this action be dismissed against me.

Dated:     January 7, 2005
           Canton, Ohio

                                    _____
                                    DR. BRADFORD BLACK

Sworn to before me this
7 day of January, 2005

_____
       Notary Public

                    ELIZABETH ANDRISANI
                    Notary Public, State of Ohio
                    My Commission Expires  1-27-08

5

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ISAAC STENGEL
11W 47TH Street
New York, NY 10036
Tel: 917-416-1759

**SUMMONS**
Index Number.

| ISAAC STENGEL | |
| Plaintiff | o 4 11 691S |
| -against- | Date index No. |
| BRADFORD BLACK | purchased |
| Defendant | |
| | 12 /1 /04 |

The person named as defendant above:

PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the

complaint of the Plaintiff herein and to serve a copy of your answer on the Plaintiff at the

address indicated below within 20 days after service of this summons ( not counting the

day of service itself), or within 30days after service is coming if the summons is not

delivered to you with the State of New York.

You are hereby notified that should you fail to answer, a judgment will be entered against

you by default for the relief demanded in the complaint.

Dated: 12/1/04      ,

[Date of summons]

*Isaac Stengel*
ISAAC STENGEL
Plaintiff Pro Se

Defendant: Bradford Black, 2360 Southeast Blvd, Salem, Ohio 44460

NOTICE: the nature of this action is unjust enrichment, no good title, conversion.
The relief sought is the return of my 5.10ct Emerald Cut Diamond or value of the 5.10ct
Emerald Cut Diamond.
Should Defendant fail to appear herein, judgment will be entered by default for the value
of $84,150.00 for the 5.10ct Emerald Cut Diamond.
Venue: Plaintiff designate New York County as the place of trial. The basis of this
designation is, plaintiff office in New York County.

NEW YORK
COUNTY CLERK'S OFFICE

Received 12-8-04  2:30px

DEC ≈ 1 2004

NOT COMPARED
WITH COPY FILED

NEW YORK
COUNTY CLERK'S OFFICE

DEC ~ 1 2004

NOT COMPARED
WITH COPY FILED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------x

ISAAC STENGEL

                                  Plaintiffs,

        -against-

BRADFORD BLACK

                      Defendant

-----------------------------------------------------------

Index No. 0 4116915

Verified Complaint

Civil Action

Jury Demand

Plaintiff, as and for his complaint against defendant alleges as follows:

1. At all times herein-mentioned plaintiff, ISAAC STENGEL, is and was employed in business in the County of New York City, and State of New York.

2. At all times herein mentioned plaintiff was a dealer regularly engaged in the business of buying and selling diamonds and other precious stones and jewelry, and is the owner of the 5.10 emerald cut shape carat GVS2 quality solitaire diamond. The retail value of which is $84,150.00, which is in the possession of the defendant BLACK and is the subject matter of this lawsuit.

3. At all times herein-mentioned defendant BLACK was a resident of the State OHIO at 2360 Southeast Boulevard Salem, Ohio 44460, and engaged in purchasing diamonds in the Borough of Manhattan, County of New York.

4. That defendant BLACK had continuous dealing with diamond merchants in New York since 1981.

5. Subsequently, defendant Black established contact with a Mr. Rosental through the Wall Street Journal in late 1980's early 1990's.

6. That defendant BLACK knew that Rosental was a broker – not an owner as he had advertised, and didn't own the diamonds, he charged a 5% commission on all his sales.

7. Upon information and belief, defendant had financial dealings with David Rosental, from the year 2000 through November 2002, and is subsequently the subject matter of this lawsuit.

8. Upon information and belief, defendant Black was aware of the questionable character of David Rosental.

9. Defendant Black's acceptance of the subject diamond was a means of acquiring collateral from Rosental.

10. On November 26, 2001 plaintiff delivered to David Rosental possession of the one 5.10 emerald cut shape carat GVS2 quality solitaire diamond with a wholesale value in excess FIFTY THOUSAND and 00/100 ($50,000.00) DOLLARS, for a possible purchase by defendant BLACK.

11. Defendant BLACK was not a bona fide purchaser; he did not purchase the diamond, as he had every intention of returning the diamond.

12. Defendant BLACK'S action was in violation of reasonable commercial standards of fair dealings in the trade. Defendant BLACK thereby enriched himself with plaintiff's property.

13. That when plaintiff learned of the fact that the defendant has possession of the subject diamond, on or about October 27, 2002, the plaintiff, demanded from the defendant the diamond or its monetary value.

14. That the defendant told plaintiff that he is holding subject diamond as collateral.

15. Plaintiff has been damaged by the actions of the defendant as to the retail value of $ 84,150.00. Wherefore plaintiff demands judgement for return of the subject diamond or its retail value.

### FIRST CAUSE OF ACTION UNJUST ENRICHMENT

16. Repeats and re alleges allegations 1 through 15.

17. Defendant BLACK'S action was in violation of reasonable commercial standards of fair dealings in the trade. Defendant BLACK thereby enriched

himself with plaintiff's property. Wherefore plaintiff demands judgement for return of the subject diamond or its retail value.

## SECOND CAUSE OF ACTION CONVERSION

18. Repeats and re alleges allegations 1 through 17.

19. Defendant BLACK converted plaintiff's property.

20. Defendant BLACK willfully and knowingly converted plaintiff's property, as he was fully aware that Rosental did not own the subject diamond.

21. Plaintiff has been damaged by defendant BLACK's conversion action. Wherefore plaintiff demands judgement for return of the subject diamond or its retail value.

## THIRD CAUSE OF ACTION FAILURE TO ACQUIRE GOOD TITLE

22. Repeats and re alleges allegations 1 through 21.

23. Plaintiff never issued an invoice transferring title to Rosental.

24. Defendant BLACK testified that he never acquired title, as Rosental did not issue him an invoice.

25. Defendant BLACK was fully aware of the fact that Rosental was a thief who did not own any diamonds.

26. Defendant BLACK made no effort to learn who the owner of the subject diamond was.

27. Whereas defendant BLACK had no intention of acquiring good title. Plaintiff has been damaged by the actions of defendant BLACK.

28. Wherefore plaintiff demands judgement for the return of the subject diamond or it retail value together with cost of suit plus interest.

*Isaac Stengel*

Isaac Stengel

Pro Se

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ISAAC STENGEL                          :

     Plaintiff              :

    -against-

BRADFORD BLACK                   :

    Defendant            :

                   X

INDEX NO. 0411 6915

VERIFICATION

     ISAAC STENGEL, being duly sworn, deposes and says: I am the Plaintiff pro se in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on the information and belief and as to those matters I believe them to be true.

AFFIRMED
Dated: November 30, 2004
New York, NY

                                ISAAC STENGEL

NEW YORK
COUNTY CLERK'S OFFICE

DEC 1 2004

NOT COMPARED
WITH COPY FILED

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ISAAC STENGEL,

       Plaintiff,   :  **COMPLAINT**
             :  **PLAINTIFF DEMANDS TRIAL BY JURY**

  -against-

         **03 CV 0495**

BRADFORD BLACK,

       Defendant.

-------------------------------------------

*RECEIVED*
*JAN 22 2003*
*U.S.D.C. S.D.N.Y.*

1.  At all times hereinafter mentioned, plaintiff was and still is a resident of the State of New York, City of New York with a mailing address at: c/o Diamond Dealers Club, 11 West 47th Street, New York, New York 10036.

2.  Defendant Bradford Black was and still is a resident of the State of Ohio and having a mailing address at: 2360 Southeast Boulevard, Salem, Ohio 44460.

3.  The jurisdiction of this Court is invoked under "diversity of citizenship" pursuant to 28 USC §1332.

4.  Upon information and belief, defendant had financial dealings with one David Rosenthal, from the year 2000 through November, 2002.

5.  Upon information and belief, defendant was aware of the questionable character and David Rosenthal, who was a middle man and salesman of certain diamonds.

6.  Upon information and belief, the defendant enlisted the services of the FBI, specifically agent Mark McMurty in connection with his prior dealings with David Rosenthal.

7.  Upon information and belief the defendant was fully aware that David Rosenthal did not own the diamond which is the subject of this lawsuit.

8.  At all times herein mentioned, plaintiff was a dealer regularly engaged in the business of

buying and selling diamonds and is the owner of the 5.10 carat GVS2 quality solitaire diamond, the retail value of which is $84,150.00, which is in the possession of the defendant and is the subject matter of this lawsuit.

9.      That when plaintiff learned of the fact that the defendant had possession of the subject diamond, on or about October 27, 2002, the plaintiff, in writing, demanded from the defendant that the diamond be returned to him.

10.      That the defendant explained to the plaintiff that he has received the diamond from David Rosenthal for money he had given to David Rosenthal.

11.      That defendant told plaintiff that he had acquired a judgment against David Rosenthal for the money that he had given to David Rosenthal.

12.      That defendant told plaintiff that he wanted to return the subject diamond to David Rosenthal if he would reimburse him for the money. However, David Rosenthal did not reimburse him for the money and the defendant still has possession of the diamond in question.

13.      That the defendant told the plaintiff that he is holding subject diamond as collateral.

14.      Plaintiff has been damaged by the actions of the defendant in the sum of $84,150.00.

       WHEREFORE, plaintiff demands judgment in the form of money damages in the amount of $84,150.00 or in the alternative, a return of the diamond, together with costs and interest.

ISAAC STENGEL
c/o Diamond Dealers Club
11 West 47th Street
New York, New York 10036
(917) 416-1759

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
ISAAC STENGEL,                          :
                                        :
                    Plaintiff,          :         03 Civ. 495 (GEL)
                                        :
        -v-                             :         OPINION AND ORDER
                                        :
BRADFORD BLACK,                         :
                                        :
                    Defendant.          :
                                        :
------------------------------------------------------x

Isaac Stengel, pro se.

David P. Stich, Solomon Pearl Blum Heymann
& Stich LLP, New York, NY, for defendant
Bradford Black.


GERARD E. LYNCH, District Judge:

        In this diversity action, plaintiff Isaac Stengel alleges that he is the true owner of a certain

diamond now in the possession of defendant Bradford Black, who allegedly purchased the

diamond from a third party, one David Rosenthal, knowing that Rosenthal was not the true

owner. Stengel seeks damages or, in the alternative, return of the diamond. Black, an Ohio

resident, moves to dismiss for lack of personal jurisdiction. Because plaintiff has not made a

prima facie showing that this Court may assert jurisdiction over Black under New York's long-

arm statute, the motion will be granted.

                                        DISCUSSION

        "In assessing whether personal jurisdiction is authorized, 'the court must look first to the

long-arm statute of the forum state,'" and then, if the statutory requirements are met, determine

whether the exercise of jurisdiction is consistent with due process. <u>Whitaker v. American Telecasting, Inc.</u>, 261 F.3d 196, 208 (2d Cir. 2001). Stengel cannot get past the first stage of this inquiry, since he has failed to allege facts that would support a finding that New York's long-arm statute authorizes jurisdiction here.

The burden is on the plaintiff to show that the court has jurisdiction over the defendant. <u>Kernan v. Kurz-Hastings, Inc.</u>, 175 F.3d 236, 240 (2d Cir. 1999). Where the court, as here, must rely solely on pleadings and supporting affidavits, the plaintiff "need only make a <u>prima facie</u> showing of jurisdiction." <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 507 (2d Cir. 1994). Stengel's pro se complaint states that Black "was and still is a resident of the State of Ohio" (Compl. ¶ 2), and makes no allegation that Black has any systematic or continuous contact with New York that would justify general jurisdiction over him. It further alleges that "defendant had financial dealings with one David Rosenthal from the year 2000 through November, 2002," without specifying whether those dealings related to the diamond or where they took place. (Compl. ¶ 4.) The complaint also alleges that "defendant enlisted the services of the FBI . . . in connection with his prior dealings with David Rosenthal," and that defendant "told plaintiff that he had acquired a judgment against David Rosenthal for the money that he had given to David Rosenthal." (Compl. ¶¶ 6, 11.) The complaint does not allege that Black acquired the diamond in New York or that the transaction was otherwise connected to this state.

Black has responded to the complaint by filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), along with an attached affidavit. In the affidavit, Black avers that he has "no connection with the State of New York," that he is a urologist licensed to practice only in Ohio, that he has no business other than his Ohio medical practice, that he has never treated patients or

2

had any kind of office in New York, and that he has no interest in any property located in New York. (Black Affid. ¶¶ 1, 8-13.) More importantly, he states that he negotiated the terms of his purchase of the diamond from Rosenthal on May 26, 2000, "by telephone from Ohio," that the diamond was delivered to him in Ohio, that he remitted payment for the diamond from an Ohio bank, and that his lawsuit against Rosenthal was filed in Ohio. (Id. ¶¶ 2, 5.) Although his affidavit does not mention the fact, Black concedes in the memorandum of law accompanying his motion that Rosenthal was located in New York at that time. (D. Mem. at 11.) These statements are not necessarily inconsistent with the complaint's allegation that "defendant had financial dealings with one David Rosenthal from the year 2000 through November, 2002" (Compl. ¶ 4), but neither Stengel nor Black refer to any specific dealings with Rosenthal other than the telephonic negotiations for the purchase of the diamond.

Stengel, misapprehending Black's motion as one for summary judgment, responds only by making the general claim that "there are factual issues and issues which require discovery proceedings." (P. Opp. at 2.) However, Black has not moved for summary judgment; rather, he has moved for immediate dismissal because, as an Ohio resident who has never done business in New York, he is not subject to this court's jurisdiction. Factual discovery, even on the limited issue of personal jurisdiction, is not necessarily called for, since Stengel could defeat Black's motion to dismiss simply by "pleading in good faith . . . legally sufficient allegations of jurisdiction." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

The question at this stage of the proceedings, then, is whether the facts pled by plaintiff or conceded by defendant, specifically, telephonic negotiations by a person outside New York to

purchase property from a seller in New York, provides in personam jurisdiction over the

purchaser under the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(1), on claims related to

the property purchased in that transaction. The New York case law makes clear that it does not.

The New York statute asserts jurisdiction over a non-domiciliary who "transacts any

business within the state or contracts anywhere to supply goods or services in the state" for "a

cause of action arising from" that transaction. Id. Courts in New York have had frequent

occasion to address whether a purchaser of goods outside the state who negotiates by telephone

with a seller in New York "transacts . . . business within" New York within the meaning of this

statute.[1] The New York Court of Appeals has ruled that "there is no transaction of business in

New York where an offer placed outside the State by telephone is received and accepted in New

York." Glassman v. Hyder, 23 N.Y.2d 354, 363 (1968). The Second Circuit has found, in the

case of an out-of-state defendant whose only contact with New York was a telephone order

placed to the New York plaintiff, Beekman Paper Co., Inc. v. National Paper Products, Dkt. No.

88 Civ. 7173 (TPG), 1989 WL 99822, at *1 (S.D.N.Y. Aug. 22, 1989), that "It is inconceivable

that [C.P.L.R. § 302(a)], however liberally construed, could confer jurisdiction over parties for

whom the record reveals, and Beekman's complaint pleads, absolutely no relevant contacts with

New York." Beekman Paper Co., Inc. v. National Paper Products, 909 F.2d 67, 69 (2d Cir.

1990). Even in the case of more extensive negotiations, such as those perhaps alleged in the

---

[1] Even absent any pronouncements by the New York courts, the language of § 302(a)(1)
itself casts doubt on the possibility of in personam jurisdiction based solely on the purchase by an
out-of-state defendant of goods from a New York seller. By expressly providing jurisdiction
over a defendant who "contracts anywhere to supply goods or services in the state," the statute
would appear to rule out the possibility that "transacting business within the state" was intended
to encompass those who contract to purchase goods from a New York supplier.

complaint, courts have found that jurisdiction is not established where the defendant conducted those negotiations from outside the state exclusively by telephone, facsimile transmissions, or mail. See, e.g., Whitaker v. Fresno Telsat, Inc., 87 F. Supp. 2d 227, 230 (S.D.N.Y. 1999), aff'd, 261 F.3d 196 (2d Cir. 2001); Worldwide Futgol Assocs. v. Event Entertainment, Inc., 983 F. Supp. 173, 177 (E.D.N.Y. 1997) (citing numerous state-court cases).[2]

Because Stengel is acting without the assistance of counsel, the Court recognizes that he may not have appreciated the importance of alleging sufficient jurisdictional facts, either in his complaint or in responding to Black's motion to dismiss. Indeed, Stengel seems to have misunderstood Black's motion as one for summary judgment on the merits. Accordingly, it is appropriate to grant Stengel leave to replead, in order that he may supplement his complaint with any relevant facts concerning either Black's contacts with Rosenthal, or other activities by Black in New York, that might support this Court's jurisdiction over him. If he alleged any such facts, Stengel might be entitled to discovery about them, so that the Court could determine, for example, the nature of Black's allegedly prolonged "financial dealings" with Rosenthal, and whether Black has reached out to New York to do business with Rosenthal in a manner that

---

[2] Under "rare" circumstances, jurisdiction can be based exclusively on telephone calls placed from outside the state — but only if the defendant "'projects' itself into New York events," Worldwide Futgol, 983 F. Supp. at 177, where it can be said to have "engage[d] in extensive purposeful activity" in New York by virtue of the calls. Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 17 (1970). In Parke-Bernet, the Court of Appeals found that the California defendant, by requesting an open telephone line to permit him to participate in bidding during an auction in New York, became subject to suit in the New York courts. The case, the Court explained, "falls between the situation where a defendant was physically present at the time the contract was made — the clearest sort of case in which our courts would have [§] 302 jurisdiction . . . — and the situation where a defendant merely telephones a single order from outside the State — a case in which our courts would not have such jurisdiction." Id. In effect, the actions of the defendant in Parke-Bernet were tantamount to his physical presence at the auction. Nothing of the sort is alleged by plaintiff here.

would support a claim of "purposeful activity" in New York. So far, however, Stengel has not alleged facts that would support any such determinations, and therefore Black cannot be made to proceed further in a New York court.

For the sake of the pro se plaintiff, we spell out what is obvious to lawyers and judges. The dismissal of Stengel's complaint is not a judgment on the merits of his lawsuit. It does not preclude re-filing the complaint in Ohio, where the courts would clearly have jurisdiction over the person of the defendant, or indeed here, if the plaintiff can plead facts that demonstrate that Black purposefully did business in New York. Nor is this dismissal the result of a mere legal technicality. As the Supreme Court has held, and reaffirmed on numerous occasions, it would be unfair to require someone to travel to a distant state to defend a lawsuit when there is no indication that he has in any way "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

## CONCLUSION

Accordingly, the complaint is dismissed for lack of personal jurisdiction over defendant, without prejudice to re-filing in a court that has such jurisdiction. Plaintiff is granted leave to file an amended complaint on or before May 16, 2003, if he is able to allege additional facts warranting the exercise of jurisdiction over defendant by this Court.

SO ORDERED.

Dated: New York, New York
        April 23, 2003

GERARD E. LYNCH
United States District Judge

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ISAAC STENGEL,

               Plaintiff,      :   **AMENDED COMPLAINT**

                      :   **PLAINTIFF DEMANDS TRIAL BY JURY**

     -against-

                      :  CASE # 03 CIV 0495 (GEL)

BRADFORD BLACK,

               Defendant.  :
------------------------------------------------------------X



RECEIVED
MAY 1 6 2003
PRO SE OFFICE

1.   At all times hereinafter mentioned, plaintiff was and still is a resident of the State of New York, City of New York with a mailing address at: c/o Diamond Dealers Club, 11 West 47th Street, New York, New York 10036.

2.   Defendant Bradford Black was and still is a resident of the State of Ohio and having a mailing address at: 2360 Southeast Boulevard, Salem, Ohio 44460.

3.   The jurisdiction of this Court is invoked under "diversity of citizenship" pursuant to 28 USC §1332.

4.   David Rosental was a diamond salesmen who acted as an agent for New York City Diamond Dealers in general, and on specific occasions, for Isaac Stengel, a diamond merchant.

5.   Upon information and belief, defendant had financial dealings with David Rosental on numerous occasions prior to the year 2000 and continuing through November 2002.

6.   Upon information and belief, defendant Bradford Black, in person, transacted business with his agent, David Rosental, who was a diamond broker to the public in general, and specifically for the transactions with the defendant, Bradford Black.

7.   David Rosental; contacted Isaac Stengel on behalf of Bradford Black, regarding a particular size and shape diamond that he wanted to procure for Bradford Black.

8.      Upon information and belief, defendant Bradford Black has had numerous contacts with New York City in connection with purchasing and replacement of diamonds for many years, prior to May 26, 2000.

9.      Upon information and belief, prior to May, 2002 defendant Bradford Black had many dealings and had continuous business dealings with David Rosental, as his agent, in the city of New York, in connection with transactions involving the sale of diamonds.

10.     Upon information and belief, prior to May 2000, David Rosental sold a certain diamond to Bradford Black which subsequently was lost and was compensated for the loss by his insurance company. An additional diamond was reportedly chipped or damaged and the defendant Bradford Black submitted an additional claim for repairs or replacement, all through his agent, David Rosental.

11.     On or about May 26, 2000, defendant Bradford Black entered into a contract with his agent David Rosental for the purpose of providing another diamond gemstone to Bradford Black.

12.     Upon information and belief, defendant Bradford Black used the services of David Rosental, his agent, on a continuing basis for the purpose of procuring a replacement diamond and for dealing with the insurance company which covered the claim for defendant Bradford Black.

13.     Upon information and belief, defendant Bradford Black was aware of the questionable character of David Rosental, who was a middle man and salesman of certain diamonds.

14.     Upon information and belief, there appeared to be some problem which arose between the defendant Bradford Black and his agent David Rosental which caused the defendant to enlist the services of the FBI, specifically agent Mark McMurty in connection with his prior dealings with David Rosental.

15.     Upon information and belief the defendant was fully aware that David Rosental did not own the diamond which is the subject of this lawsuit.

16.    At all times herein mentioned, plaintiff was a dealer regularly engaged in the business of buying and selling diamonds and is the owner of the 5.10 carat GVS2 quality solitaire diamond, the retail value of which is $84,150.00, which is in the possession of the defendant and is the subject matter of this lawsuit.

17.    That when plaintiff learned of the fact that the defendant had possession of the subject diamond, on or about October 27, 2002, the plaintiff, in writing, demanded from the defendant that the diamond be returned to him.

18.    That the defendant explained to the plaintiff that he has received the diamond from David Rosental for money he had given to David Rosental.

19.    That defendant told plaintiff that he had acquired a judgment against David Rosental (attached hereto) for the money that he had given to David Rosental.

20.    That defendant told plaintiff that he wanted to return the subject diamond to David Rosental if he would reimburse him for the money. However, David Rosental did not reimburse him for the money and the defendant still has possession of the diamond in question.

21.    That the defendant told the plaintiff that he is holding subject diamond as collateral.

22.    Plaintiff has been damaged by the actions of the defendant in the sum of $84,150.00.

WHEREFORE, plaintiff demands judgment in the form of money damages in the amount of $84,150.00 or in the alternative, a return of the diamond, together with costs and interest.

ISAAC STENGEL
c/o Diamond Dealers Club
11 West 47th Street
New York, New York 10036
(917) 416-1759

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ISAAC STENGEL,                                  :

                          Plaintiff,            :

                                                :        03 Civ. 0495 (GEL)
      -against-                                 :
                                                :        **OPINION AND ORDER**
BRADFORD BLACK,                                 :

                          Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Isaac Stengel, *pro se*, for plaintiff.

David P. Stich, Solomon Pearl Blum Heymann & Stich,
New York, NY (Michael J. Semack, of counsel), for defendant.


GERARD E. LYNCH, District Judge:

 Plaintiff Isaac Stengel, a diamond dealer, brings the present action in diversity against

defendant Bradford Black, for replevin of a 5.1-carat emerald-cut diamond in Black's possession

that Stengel allegedly owns, or in the alternative for damages for conversion. Black moves to

dismiss for lack of subject matter jurisdiction, claiming the amount in controversy is less than

$75,000. For the reasons stated below, Black's motion will be granted.

## BACKGROUND

 The facts, which are taken from the complaint except where otherwise noted, are as

follows. A diamond dealer named David Rosental contacted Isaac Stengel in May 2000 to

procure a diamond of a particular size and shape for the defendant Bradford Black. Stengel

testified at his deposition that he procured a 5.1-carat emerald-cut diamond from Julius Klein

Diamonds LLC ("Klein") and sold it to Rosental, from whom Black in turn purchased it.

(Stengel Tr. 38-57.) However, Rosental's check to Stengel for the promised amount was

dishonored for insufficient funds. (Id. 62.) The diamond later became the subject of a dispute between Rosental and Black, and when Stengel asked Black to return the diamond in October 2002, Black refused, stating that he was holding it "as collateral" in that dispute. Stengel claims, however, that Black was aware that Rosental did not own the diamond. Stengel brought the present action for the return of the diamond with costs and interest, and in the alternative for damages in the amount of $84,150, which he claims is the retail value of the diamond.

At a status conference on March 17, 2004, the defendant indicated his intention to move to dismiss based on lack of jurisdiction, arguing that the pleadings and facts adduced in discovery do not support a finding that the amount in controversy could exceed $75,000. Since it was in the interest of efficiency to consider the jurisdictional question before addressing motions for summary judgment on the merits, the Court stayed proceedings in order to consider the jurisdictional question, which was briefed on an expedited schedule.[1]

## DISCUSSION

I.    **Legal Standard**

Plaintiff asserts diversity jurisdiction under 28 U.S.C. § 1332; under the statute, such jurisdiction is proper only when the amount in controversy exceeds $75,000. The amount in controversy is determined from the time the action is commenced. Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994). On a motion to dismiss challenging

---

[1] Plaintiff argues that the defendant's motion to dismiss was untimely because it was filed beyond the 20 days afforded to a defendant to assert affirmative defenses in an answer. (P. Mem. 4.) However, the absence of subject matter jurisdiction defeats the Court's power to take any action at all; thus, it may be raised, by motion of any party or by the Court sua sponte, at any time. Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 786 (2d Cir. 1994). Accordingly, Rule 12(h)(3), Fed. R. Civ. P., allows the defense of lack of subject matter jurisdiction to be raised by motion at any time, not only in a defendant's answer.

the sufficiency of the amount in controversy, the sum claimed by the plaintiff ordinarily controls, so long as it is claimed in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). A suit may not be dismissed for lack of the jurisdictional amount in controversy unless it appears "to a legal certainty" that the plaintiff cannot recover the amount claimed. Id. "[T]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff." Chase Manhattan Bank, N.A. v. American Nat. Bank and Trust Co., 93 F.3d 1064, 1070 (2d Cir. 1996) (citations omitted).

However, the burden of proof rests on the party seeking to establish federal jurisdiction to demonstrate "to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Tongkook America, 14 F.3d at 784. "Where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" United Food & Comm. Workers Union v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994), citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936). Such proof may consist of evidence in the record produced in discovery. Id. If on the face of the complaint or the facts disclosed at trial, it becomes apparent "to a legal certainty" that the plaintiff's claim could never have amounted to the sum necessary to confer jurisdiction, "there is no injustice in dismissing the suit." St. Paul Mercury, 303 U.S. at 290.

-3-

II.    **Amount in Controversy**

A.    **Measure of Damages**

To determine the amount in controversy in a claim for money damages, the starting point is the measure of damages permitted by law under the cause of action claimed. See Lucente v. IBM, 310 F.3d 243, 261 (2d Cir. 2000). The present action sounds in either conversion or replevin.[2] In a conversion claim, the measure of damages is the fair market value of the property converted at the time of the conversion.[3] Caballero v. Anselmo, 759 F. Supp. 144, 148 (S.D.N.Y. 1991); Hartford Acc. & Indem. Co. v. Walston & Co., 22 N.Y.2d 672, 673, 238 N.E.2d 754, 754 (1968). To the extent that plaintiff's complaint sounds in replevin, however, the rule is slightly more complicated. In an action for replevin, where repossession of the property is impossible, a plaintiff is entitled to the property's replacement value. See Satterwhite v. Harriman Nat. Bank & Trust Co., 13 F. Supp. 493, 499 (S.D.N.Y. 1935). For these purposes, replacement value is measured at the time of trial in order to reflect any change in value during

---

[2] The complaint in this case does not state any specific cause of action under which the plaintiff claims relief. Defendant argues that the measure of damages should be that applicable to breach of contract claims. (D. Mem. 8.) This is incorrect, as no contract between Stengel and Black is alleged. Rather, construed liberally, plaintiff's *pro se* complaint sounds in either conversion or replevin. See Van Brunt v. Rauschenberg, 799 F. Supp. 1467, 1473 (S.D.N.Y. 1992) ("To state a claim for conversion under New York law, a plaintiff must allege that he has an immediate superior right of possession to a specific identifiable thing and that a defendant with intent to interfere with such ownership or possession exercised dominion or actually interfered with the property to the exclusion of or in defiance of the plaintiff's rights. Similarly, to establish a cause of action in replevin, the owner of the property must demonstrate that he has an immediate and superior right to possession of the chattel including proof of ownership.").

[3] Plaintiff asserts that the proper measure of his damages is the value of the diamond at the time of trial. (P. Mem. 7.) While an exception to the general rule measuring damages from the time of conversion exists for "unique and irreplaceable" items like works of art, see Pagliai v. Del Re, No. 99 Civ. 9030, 2000 WL 122142, at *1 (S.D.N.Y. January 31, 2000), diamonds do not fall into this category, as they may be replaced. The general rule, therefore, applies here.

the time the property was wrongfully in the defendant's possession. Id.; Spear v. Auto Dealers'
Discount Corp., 278 N.Y.S. 561, 561-62 (N.Y. Sup. Ct. 1935). Because the value of the property
at the time of trial is a matter of speculation, this rule could conceivably allow for the exercise of
jurisdiction even where the value of the property was less than the required jurisdictional
minimum before the wrongful conversion took place. Cf. United Jersey Bank Southwest, N. A.
v. Keystone Collision, Inc., 482 F. Supp. 71, 72 (E.D. Pa. 1979) (noting that where value of
automobile in replevin action met jurisdictional minimum at the time of conversion but had
depreciated, jurisdiction was proper where damages were available to compensate for
depreciation). This complication does not affect the present case, however. First, there is no
indication here that repossession of the diamond is impossible; the parties agree that Black
continues to possess the diamond and could return it if ordered by the Court. Second, in this
case, the result is the same no matter which measure is used, as plaintiff has failed to present any
competent evidence that the value of the disputed diamond exceeded $75,000 either at the time it
was acquired by Black or at any later point.

B.      Evidence of the Diamond's Value

Stengel's complaint claims $84,150 in damages, which he asserts is the retail value of the
diamond that he sold to Rosental and that Black now holds. However, outside this averment,
nothing in the complaint or the post-discovery record places the value of this diamond above
$75,000. On the contrary, the extensive competent evidence in the record, including sworn
testimony and other statements by the plaintiff himself, overwhelmingly establishes that the
value of the diamond is substantially less than the jurisdictional amount.

According to Stengel's deposition testimony, Rosental contacted him to seek a diamond of a particular quality for Black. Stengel then obtained the diamond in question from Klein in November 2001 for a mutually agreed-upon price of $45,721.50, which Stengel testified was a fair wholesale price for the diamond. (Stengel Tr. 38; 44-45.) Stengel then sold the diamond to Rosental for $49,898, which Rosental paid by check in April 2002. (Id. 69-70.)[4] After Rosental's check bounced, Stengel reported the matter to the police in June 2002, claiming the diamond's value at $50,000. (Semack Aff. Ex. G; Stengel Tr. 67-68.) When he remained uncompensated, he sued Rosental in the New York state courts in July 2002, alleging damages in the amount of $51,878, which, according to the complaint in that case, amounted to his loss plus interest. (Semack Aff. Ex. B at Ex. 1, ¶ 11.)

In addition to these undisputed facts, other evidence in the record corroborates a low value for the diamond. Black asserts that he paid Rosental $63,617 for the diamond. (P. Mem. 5.) Black's sworn testimony, however, reflects a slightly more complicated reality. Black originally paid Rosental $63,617 for a different diamond, several years earlier. (Black Tr. 28.) When that diamond was later damaged, Black forwarded the insurance proceeds, in the same amount, to Rosental in about May 2000, to purchase an "equivalent" stone. (Id. 36.) About a year and a half later (id. 40), after complaining to the FBI (id. 49-50) and suing and obtaining a default judgment (id. 66), Black finally received a diamond from Rosental — apparently the diamond Rosental obtained from Stengel. Black, however, was unhappy with the diamond, — which he did not think was as good as the previous diamond he had purchased from Rosental.

---

[4] Stengel testified that his price to Rosental represented a mark-up of 5% over the wholesale price (Stengel Tr. 80); in fact, the difference between the purchase and sale prices yields a profit of approximately 9%.

When Black objected to the quality of the stone, Rosental refused to refund his money or take the diamond back. (Id. 58-59.)[5] In connection with his dispute with Rosental, Black had the diamond appraised; the resulting (unsworn) appraisal dated August 30, 2002, reflects a value for the diamond plus its setting, which included a platinum band and two smaller "tapered baguette" diamonds, of $68,500 excluding tax. (Semack Aff. Ex. F at 5.)

The only documentation in the record supporting a valuation of over $75,000 is the "Rapaport Diamond Report" provided by Stengel, dated April 4, 2003, which consists of a chart estimating the "approximate high cash asking price" for diamonds by weight and level of clarity. (Semack Aff. Ex. B at Ex. 5.) According to this chart, a diamond of the general size and quality of the one at issue would be valued at $16,300 per carat, or $83,130.[6] However, as defendant points out, this report is not probative for several reasons. First, like Black's appraisal, it is not a sworn statement by anyone. At best, it could be considered, as a reference relied upon in the trade, as supporting documentation for an opinion by Stengel, an experienced diamond dealer. Second, it does not represent an appraisal of the diamond in question, but rather a chart by which one may estimate the asking price of diamonds of particular weights and levels of clarity generally. Third, it purports to list estimated prices only for "pear shaped" diamonds, rather than diamonds that are emerald-cut, like the diamond in dispute. The report explicitly states that "prices for fancy shapes are highly dependent on the cut." Finally, the report itself significantly qualifies its estimates, stating that they reflect "HIGH CASH NEW YORK ASKING PRICES,"

---

[5] It is a reasonable inference that Rosental, who was the subject of numerous fraud complaints received by the FBI and the Postal Inspection Service (Semack Aff. Ex. G), would not have provided Black with a diamond worth *more* that Black had paid.

[6] Stengel testified that the chart reflected wholesale prices. (Stengel Tr. 109-11.)

and that "these prices may be substantially higher than actual transaction prices." (Semack Aff. Ex. B at Ex. 5.) Given these limitations, the Rapaport Report is of little probative value in determining the actual fair market value of the diamond at issue here.

In response to these objections, plaintiff submits several pieces of "evidence" which he has attached to his opposition papers: a letter from Martin Hochbaum of the Diamond Dealer's Club, stating that the Rapaport report on pear-shaped diamonds "is used as a reference for all fancy shaped stones," two estimates from Kramer Brothers and S.H. Zell and Sons, purporting to value the disputed 5.1 carat VS2 clarity emerald-cut diamond at $107,000 and $124,500 respectively, and three appraisals carried out by the European Gemological Laboratory ("EGL") on various diamonds, which Stengel alleges are "inferior" to the diamond he sold to Rosental, ranging from $78,450 to $91,590. (See documents attached to P. Mem.)

These documents, however, are not part of the evidentiary record, and may not be considered by the Court. First, they were not produced in discovery, despite written interrogatories that are directly on point. Black demanded "the basis for Stengel's valuation of the Diamond and . . . all supporting documents (see Semack Aff. Ex. C, interrogatory #5); Stengel's terse response directed defendant to the Rapaport report, and no other source (id. Ex. D, response #5). Similarly, Black demanded the usual information regarding any expert witnesses to be called by Stengel (id. Ex. C, interrogatory #21); Stengel responded that he would provide such information (id. Ex D, response #21), but apparently never did. Even making all allowances for Stengel's *pro se* status, it would be unfair to defendant to accept the submission of purported expert opinions that were submitted for the first time after the close of discovery, after the defendant had spent the time and money to file a summary judgment motion to dismiss

in good faith reliance on the presumption that the plaintiff had conformed to the discovery procedures prescribed by the Federal Rules, and that defendant therefore has not had an opportunity to explore by deposition.

Second, even if the Court were to overlook their belated production, none of the documents submitted are admissible in their present form. Neither the Hochman statement nor the various appraisals are submitted under oath, nor are the qualifications of the appraisers established. More significantly, the appraisals would not be competent testimony in any event. The letters from Kramer Bros. and S.H. Zell and Sons purport to provide an appraisal for the actual stone in question. However, neither appraiser purports to have actually examined the stone, nor could they have, as the appraisals were given in 2004, and the stone has remained in Black's possession during the pendency of this suit. The Kramer Bros. and Zell letters are therefore more in the nature of an estimated value, much like that produced by the Rapaport Report. Moreover, even taken at face value, they purport to reflect a "retail value" (Zell) or "replacement" value (Kramer). It is undisputed, however, that Stengel operated at the wholesale level; he provides no theory of damages under which he would be able to obtain as damages for conversion the retail value of a stone that he both purchased and sold at a wholesale price.[7] The EGL appraisals, which also reflect "estimated retail replacement value[s]," are even further afield, reflecting appraisals not of the diamond at issue here but rather of other allegedly similar stones. Since, as Stengel himself has testified, each diamond is unique (Stengel Tr. 78), these appraisals are at best remote indications of the value of the diamond in question. Because neither

---

[7] Stengel himself testified that retail prices for diamonds can be as much as 250% higher than the wholesale value. (Stengel Tr. 78.) His argument that the appraisal should be based on the prices charged by "Tiffany or Winston" (P. Mem. 6) is therefore disingenuous.

the estimates nor the appraisals offered represent the results of an examination of the diamond in dispute, none of the evidence submitted is probative of the value of that diamond.

It bears emphasis that these objections to the admissibility of the submitted materials are not mere technical or formal defects that preclude the admission of probative evidence because of legal rules deployed to the disadvantage of a party who lacks legal training or representation. The problems with Stengel's submissions go directly to their probative value, as well as to their technical admissibility under rules of procedure or evidence. "Appraisals" submitted by experts who have not actually examined a precious stone whose quality has been the subject of serious dispute are of no probative weight; nor are estimates of the highly-inflated retail value of such stones probative of the damages due a diamond wholesaler in conversion or in default of replevin. Plaintiff's failure to submit these materials in a timely way during discovery prevented defendant from exploring these (and potentially other) deficiencies by cross-examination.

In fact, the best evidence presented that goes to the fair market value of this particular diamond at the time of the conversion is the price for which Rosental, a willing and knowledgeable buyer, actually purchased it in November 2001 from Stengel, a willing and knowledgeable seller. See Datas Industries Ltd. v. OEC Freight (HK), Ltd., No. 98 Civ. 6904, 2000 WL 1597843, at *5 (S.D.N.Y. Oct. 25, 2000), ("[I]t is not unreasonable to assume, in the absence of evidence to the contrary, that what the buyer and seller agreed to in this case, as reflected in the invoice, was in fact the fair market value."). That price was under $50,000. That valuation, moreover, is consistent with what Stengel himself represented to the police and to the New York State courts as the value of the property of which Rosental defrauded him. It is also consistent with the fact that Rosental tried to pass the diamond off to Black as worth

approximately $63,000, and that Black, long before this jurisdictional issue arose, found it unsatisfactory at that price.[8]

### C.    Summary

In sum, whether plaintiff's claim is for conversion or replevin, plaintiff has failed to carry his burden on this jurisdictional challenge of demonstrating to a "reasonable probability" by a preponderance of evidence that he could have recovered the jurisdictional minimum amount at the time the suit was filed. He has failed to offer any competent proof that the diamond's value was over $75,000 either when it was in his possession, or when Black took possession of it, or at any time since. On the contrary, substantial evidence in the record establishes that the actual value of the diamond to Stengel is approximately $50,000. On these facts, there is no basis for jurisdiction based on the stone's value at the time of the conversion; similarly, jurisdiction would not be proper based on the entirely speculative chance that, should the case go to trial at some unspecified point in the future and should recovery of the diamond prove impossible, the plaintiff might at that time be entitled to recover some amount in excess of $75,000. Accordingly, his suit must be dismissed for lack of subject matter jurisdiction.

---

[8] Stengel asserts that Black "had insurance coverage based on the appraised value which was more than the purchase price" and "paid his premium based on the appraised value.". Because appraisers play a role in determining market value, he argues that the value of defendant's insurance should be used as a proxy for the market price. (P. Mem. 6.) However, he offers no evidence from the record to support his assertion about defendant's insurance, nor was the Court able to find any on independent examination of the record, save for a statement by Black in his deposition that he "guess[ed]" that the diamond was insured for $60,000. (Black Tr. 91.) This figure is consistent with the amount defendant paid for the diamond, and does not constitute evidence that it was worth more than $75,000.

## CONCLUSION

Defendant's motion is granted, and the complaint is dismissed for lack of subject matter jurisdiction.


SO ORDERED:

Dated: New York, New York
        August 26, 2004


_____
GERARD E. LYNCH
United States District Judge

**EXHIBIT  C**

# ORIGINAL

1

1   IN THE UNITED STATES DISTRICT COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   ----------------------------------------X

4   ISAAC STENGEL,

5                       Plaintiff,

6            - against -

7   BRADFORD BLACK,

8                       Defendant.

9   03 Civ 0495 (GEL)

10  ----------------------------------------X

11                     40 Wall Street
                       New York, New York
12

13                     January 12, 2004
                       11:05 a.m.

14

15         Deposition of Defendant, BRADFORD

16  BLACK, before Rita Persichetty, a Notary Public

17  of the State of New York.


19

20         ELLEN GRAUER COURT REPORTING CO.
             133 East 58th Street, Suite 1201
21             New York, New York 10022
                   212-750-6434
22                 REF:  72674

23

24

25

11

Black

1    A.    I can't give you exact dates.  We

2    were thinking about it earlier, you know, in

3    the early '90's.

4    Q.    What kind of diamond was that?

5    A.    We bought two solitaires and then

6    the one we are talking about.

7    Q.    The first one, the second diamond

8    that you bought, did you buy in New York or

9    where you live?

10    A.    I mean, I never came to New York.  I

11    just bought them in my home, but they were

12    flown from New York.

13    Q.    All four diamonds that you bought

14    were from New York?

15    A.    Yup.

16    Q.    Why did you change, the last two you

17    bought by someone else, different dealer; is

18    that correct?

19    A.    I think three we bought from the

20    same guy.  The first one went out of business.

21    Q.    When was the first deal you did with

22    Mr. Rosental?

23    A.    I'm going to say the late '80's,

24    early '90's, somewhere in that range.

25    Q.    And you have no record exactly of

19

Black

1   did he charge you commission or did he give you

2   a price for the diamond?

3        A.    Just probably a price.

4        Q.    Did Mr. Kohinoor, when you called

5   that you wanted a diamond, what happened,

6   explain how he went about it.

7        A.    I called him up and I said we are

8   interested in buying a diamond, and I says,

9   what do you have in stock, and he would tell me

10  and then we'd think about it.  Sometimes he'd

11  send them to me in the mail, we'd look at them,

12  and that's kind of how we did it.

13       Q.    And if you didn't like it?

14       A.    We sent it back and we said let's

15  look at another one.

16       Q.    And did it happen like that, did

17  that happen where you weren't satisfied with

18  the first diamond?

19       A.    Sure.

20       Q.    Let me ask you, did he send you

21  first literature after you spoke to him before

22  he sent you a diamond?

23       A.    I don't know.

24       Q.    How did you know that he was honest?

25       A.    You don't; I had to trust him.

105

Black

1      MR. SEMACK:  With -- off the record.

2      (Discussion held off the record.)

3  EXAMINATION BY

4  MR. SEMACK:

5      Q.    I'm referring to Plaintiff's

6  Exhibit 12.  Actually before I refer to that,

7  Dr. Black, when did you first become aware of

8  Mr. Stengel?

9      A.    When I got this certified letter

10  from his attorney.

11      Q.    And then what is the date of that

12  letter?

13      A.    October 22, 2002.

14      Q.    Prior to October 22, 2002, had you

15  ever heard the name Isaac Stengel before?

16      A.    No.

17      Q.    Did Mr. Rosental ever indicate to

18  you that any of the diamonds that he had

19  provided you were -- belonged to Mr. Isaac

20  Stengel?

21      A.    No.

22      Q.    Did he ever indicate to you that he

23  had anything other than the full authority to

24  sell those diamonds to you?

25      A.    No.

106

Black

1      Q.    Did -- had you ever received a phone

2   call from Mr. Bernheimer or Mr. Stengel prior

3   to May of 2000 when you paid the $63,000 to

4   Mr. Rosental?

5          A.    No.

6          MR. SEMACK:   I have no further

7   questions.

8              (Time noted: 1:25 p.m.)

1

# COPY

1

2 UNITED STATES DISTRICT COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 ------------------------------------X

5 ISAAC STENGEL,

6                          Plaintiff,

7           -against-

8 BRADFORD BLACK,
                          Defendant.

9 Case No.:  03 Civ. 0495 (GEL)

10 ------------------------------------X

11                     40 Wall Street
                    New York, New York

12                    January 13, 2004
13                    11:20 a.m.

14           Deposition of the Plaintiff,

15 ISAAC STENGEL, pursuant to Notice, before

16 Joanne Riley Bothe, CSR, RPR, a Notary Public

17 of the State of New York.

18

19

20

21

22        ELLEN GRAUER COURT REPORTING CO.
            133 East 58th Street
23        New York, New York  10022
               (212) 750-6434
24               REF: 72675

25

Stengel

1

2   assert that Dr. Black knew that Rosental did

3   not own the diamond.  What's the basis of

4   that assertion?

5       A.    Because Dr. Black mentioned he

6   knew him through the Wall Street Journal,

7   that's how he got Rosental.

8           MR. SEMACK:  Move to strike that

9       answer as nonresponsive to the question.

10      A.    Dr. Black got to David Rosental

11  through the Wall Street Journal, he advertise

12  to the public that he's a broker and charges

13  five percent, he gets the diamond from

14  wholesale and charges five percent for his

15  fee.  That's how Dr. Black got to him, he

16  knows what a broker means.

17          MR. SEMACK:  I'm going to move to

18      strike that portion of the answer which

19      is nonresponsive to my question.

20      Q.    Do you have any documents or any

21  proof indicating that Dr. Black did not know

22  that Rosental owned the diamond?

23      A.    What's the question?

24      Q.    Do you have any documents that

25  would indicate that Dr. Black did not know

106

1           Stengel

2           (Interruption.)

3       Q.      Did Mr. Rosental ever give any

4   documentation to Mr. Black indicating that

5   you owned the diamond that he's allegedly in

6   possession of?

7       A.      I have no idea.

8       Q.      Did you ever instruct

9   Mr. Rosental to provide documentation to that

10  extent?

11      A.      I don't know whether he took the

12  diamond to Mr. Black.

13      Q.      My question was, did you ever

14  instruct Mr. Rosental to provide

15  documentation or proof to Mr. Black that he

16  did not own the diamond?

17      A.      No.

18      Q.      In your complaint you alleged

19  that Dr. Black has had numerous contacts with

20  New York City in connection with purchasing a

21  replacement of diamonds for many years prior

22  to May 26 of 2000.

23           What numerous contacts has

24  Dr. Black had with New York City?

25      A.      He mentions he bought jewelry.

Stengel

And he bought the first diamond, I guess.

Q.    Other than purchasing the first diamond, are there any other contacts that you're aware of?

A.    Only that he mentions he bought jewelry.

Q.    Do you know, did the FBI ever become involved with the transaction between Dr. Black and Mr. Rosental?

A.    What do you mean by become involved?

Q.    Did the FBI ever become involved? Did they ever conduct an investigation? Was there ever a claim filed with the FBI?

A.    Mr. Black went to the FBI, correct. They gave back that this person has between 25 and 50 complaints in the last five years.

Q.    When did you find that out?

A.    I found it out from -- Mr. Black told Mr. Bernheimer, Dr. Black, that he filed with the FBI. And I subpoenaed the FBI to get the record.

Q.    Are there any other parties that